THE PEOPLE v. FRANK A. WEITHOFF.

*Criminal law—Maintaining gaming room—Betting on horse races.*

A room fitted up for the purpose of furnishing the information to enable persons to exercise their judgment in laying wagers upon horse races taking place in another part of the country,

and who pay their money irrevocably to the keeper of the
room, who receives a commission thereon, to wager it with
persons present at the races, the gains of the wager being
paid to those making bets within the room, and knowledge of
losses being brought to them therein, is a gaming room, within
the meaning of How. Stat. § 2029, which makes it a misde-
meanor for any person, for hire, gain, or reward, to keep or
maintain a gaming room.

Exceptions before judgment from recorder's court of
Detroit. (Chambers, J.) Argued November 17, 1892.
Decided December 2, 1892.

Respondent was convicted of keeping a gaming room.
Conviction affirmed. The facts are stated in the opinion.

*Henry M. Duffield* and *Don M. Dickinson,* for respondent.

*A. A. Ellis,* Attorney General, and *Samuel W. Burroughs,*
Prosecuting Attorney, for the people.

MONTGOMERY, J. The respondent was prosecuted under
section 2029 of Howell's Statutes, the information charging
that the said respondent did, for hire, gain, and reward,
keep and maintain a gaming room, contrary to the provis-
ions of said section. The section reads:

" Any person who shall, for hire, gain, or reward, keep
or maintain a gaming room, or a gaming table, or any
game of skill or chance, or partly of skill and partly of
chance, * * * shall be deemed guilty of a misde-
meanor."

The evidence on the part of the prosecution showed
that the respondent occupied and maintained a room, kept
a telegraph operator therein, and, for a commission paid by
any person, telegraphed to Guttenberg, N. J., the amount
of money the person desired to bet, and the name of the
horse chosen by him in the race at Guttenberg. The person
desiring to have his money forwarded to Guttenberg first
made out an order as follows:

" Please execute for me on the race track at the races to be held this day on the grounds of the ———, in the county of ———, state of ———, or at any other place or time, the sum of ——— dollars, ———·and do not, under any circumstances, accept odds on this race at the said race track at a less price than ———. I desire to be positively and distinctly understood, and for this reason only do place in your charge my money, for you to place my said money for me only on said horse above mentioned, and at no other place than on the grounds of said ———, during the progress of the races this day; and for this purpose I make you my common carrier. For the expenses incurred by you in so placing my money—my special money —on the grounds of the said ———, I agree to pay you the sum of five cents."

A blackboard is kept in the room, upon which is recorded at brief intervals the position of the horses in the race. The man at the blackboard, who does the marking, is called the "marker," and the man at the ticket office is called the "ticket agent." There are also employed the telegraph operator and a "helper."

The trial judge instructed the jury, basing his instructions upon the testimony given by one Crandall, as follows:

" If you believe beyond any reasonable doubt that on the 5th of January a horse race was about· to take place at Guttenberg, New Jersey, and that at the room in question a person in the defendant's employ sold tickets for that purpose, sold to Mr. Crandall a ticket, for which $1.05 was paid, then and there gave Mr. Crandall the names of the horses that were to participate in the race then about to take place at Guttenberg, and he was directed to place the money of Mr. Crandall ($1) on the horse named by Mr. Crandall, and Mr. Crandall then paid to the person so selling him a ticket in this room five cents commission, and the money was so placed as agreed, and the result of the race so announced as won by the horse on which Mr. Crandall placed his money, and you believe the money of Mr. Crandall was so placed· as a stake or wager, then that room was a gaming room, and, if kept for that purpose, was evidently within the meaning of the statute."

The statute in question was exhaustively considered in

*People v. Weithoff*, 51 Mich. 203. It was there held that betting on the result of a horse race is gaming; that a room used for the purpose of facilitating the betting on horse races is a gaming room, within the meaning of this statute; and that it is not essential to the offense either that those who bet or wager should be engaged in the game, or that the game upon which the bet is laid be conducted within the room.

It is urged for the defense here that no actual betting occurred on the premises; that the defendant had no greater responsibility for the bets than the servant of a telegraph company, who sends dispatches directing that money be wagered; and that, as no bet or wager is actually made in the room, it is not a gaming room. We think this contention ignores the real substance of the transaction. The money is placed in the hands of the defendant by one party to the wager, and, if he wins, he receives the money won in this room; if he loses it, knowledge of the loss is brought to him in this room. That it requires the intervention of another agency does not relieve the respondent. It would be a reproach to the law if it were possible that responsibility could be avoided by any such subterfuge as is apparent in the very scheme adopted by the respondent in this case. That the purpose in fitting up this room was to furnish the information which enables persons to exercise their judgment in laying wagers; that money is paid into the hands of defendant irrevocably, to wager it; and that the gains of the wager are paid and the losses made known to those making bets within the room,—are beyond question. We think this constitutes the room a gaming room, within the meaning of this statute.

Respondent's counsel rely upon the case of *People v. Wynn*, 12 N. Y. Supp. 379, as sustaining their contention. The statute under which the conviction was had in that case provides that—

"A person who keeps any room * * * with books, apparatus, or paraphernalia for the purpose of recording or registering bets or wagers or of selling pools, and any person who records or registers bets or wagers or sells pools, upon the result of any trial or contest of skill, speed, or power of endurance of man or beast, * * * is punishable by imprisonment for one year, or by fine not exceeding two thousand dollars, or both."

The third count of the indictment contained the charge of keeping, exhibiting, and employing devices and apparatus for the purpose of recording and registering bets or wagers. A similar order was executed by the prosecuting witness to the one above quoted in the present case. It was held that the evidence was insufficient to justify a conviction under the third count of the indictment. The court said:

"There was not a particle of evidence which can be possibly twisted or tortured into an offense therein described. The only evidence is that there was a blackboard on the wall. What that blackboard was ever used for is not at all explained by the evidence, and there is no presumption of guilt. It is true that the witness stated that the room was not fitted up as a school-room. But blackboards may be innocently used for many other purposes and in many other places than school-houses. There was not the slightest particle of evidence which would justify the submission of any question under the third count, and it was clearly error in the court to deny the request of the defendant as to this count of the indictment."

It will be seen that the question of whether the room in question was a gaming room was not involved, and the distinction between the two statutes is apparent. The case does not sustain the defendant's contention.

The conviction will be affirmed.

The other Justices concurred.