T. O. McBRIDE, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—GAMING AND GAMBLING HOUSE—HOUSE KEPT FOR SELLING POOLS ON HORSE-RACE IS A GAMBLING HOUSE—CHARGING OFFENSE IN LANGUAGE OF STATUTE—PRINCIPAL AND AGENT.

1. Where a statute fully defines the offense that it creates it is ordinarily sufficient for an indictment to charge the defendant with all the acts within the statutory definition, substantially in the words of the statute, without further expansion. Section 2644 of the Revised Statutes, prohibiting the keeping of a table, room house or other place for the purpose of gaming or gambling, held to fall within this rule, and to so define the offense that it creates as that an indictment charging such offense substantially in its language will be sufficient.

2. The terms *gaming* and *gambling*, as used in this statute to suppress gambling houses, are similar in meaning. The wagering, betting or laying of money or other thing of value upon the transpiring of any event whatsoever, whether it be upon the result of a game of chance, or upon a contest of skill, strength, speed or endurance, whereby one party gains and the other loses something for nothing, whether the parties

McBride v. The State of Florida.—Syllabus.

betting be the actors in the event upon which their wager is laid or not, is gaming or gambling within the meaning of this statute.

3. The purpose of Section 2644 of the Revised Statutes was to prohibit, not the gaming or gambling itself, but the *keeping of a house or other place* for any manner of gaming or gambling. If a house is kept for the purpose of having money or other thing of value staked, bet or wagered therein, upon any result or event whatsoever, such house falls within the inhibition of this statute, whether the means adopted for the decision of the question as to who is the winner or loser of the amount or thing wagered be a game prohibited by law or not.

4. The keeping of a house, room or other place for the purpose of betting upon horse-races conducted at a distant point, such bets being made in the form of a sale and purchase of what are known as "pools" upon such races, falls within the inhibition of this statute prohibiting the keeping of a gambling house.

5. Sections 2644 and 2645 of the Revised Statutes makes all the parties concerned in the keeping of a gambling house *principals,* whether in the conduct thereof the one acts as agent or clerk of another, or on his own behalf as principal. The first of the two sections makes the principal liable whether he conducts the establishment in person, or has it conducted for him by an agent, clerk or servant. When conducted by an agent, clerk or servant, the second of the two mentioned sections makes such agent, clerk or servant a principal in the crime equally punishable with his employer, and it is not necessary to indict or charge him as agent, but he can be informed against as principal and convicted upon proof showing that he violated the law in the capacity of agent for another.

Writ of Error to the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*Pope and Campbell*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

TAYLOR, C. J.:

The plaintiff in error was tried and convicted in December, 1896, in the Criminal Court of Record for Duval county for the crime of keeping and maintaining a gaming room, and from the sentence inflicted takes writ of error here.

The count of the information upon which the defendant was tried and convicted, omitting its formal parts, is as follows: "That T. O. McBride of the county of Duval and State of Florida, on the 5th day of December, in the year of our Lord one thousand eight hundred and ninety-six, and on divers other days and times between such day and the filing of this information, did then and there unlawfully and feloniously have, keep, exercise and maintain a gaming room in the building situated at the northeast corner of the intersection of the streets known as Bay street and Hogan street, in the city of Jacksonville, for the purpose of gaming and gambling."

The undisputed facts in the case were as follows: The defendant kept a room in which he had a telegraph instrument and operator with a wire connecting him with New York and Savannah. On the wall of the room was a blackboard on which were registered the names of various horses entered for races at New Orleans with the odds that were offered for and against the different horses in the betting made upon the race. Divers persons frequented the room and paid the defendant the amounts that they desired to wager on the horse of their selection, and for the money paid he gave a card or ticket as evidence of the transaction. The purchasers of these tickets or pools would then wait in the room until the impending horse-race in

New Orleans was over, when the result was promptly received by telegraph, advertised on the blackboard, and the parties having purchased pools on the winning horses were paid the amounts won by the success of the horse of his selection. The defendant operated here as agent for a firm of turfmen in Savannah, Georgia, receiving commissions on the business done as his remuneration. No other business was carried on in the room except the sale of pools upon distant horse-racing. No other game of any kind being shown to have been played or allowed there. There are no facts in the case involving any question of the right of incorporated companies to sell pools on race-tracks under chap. 4023, laws of 1891.

There are nineteen assignments of error, but we will not consider any of them except those that are urged here and argued, treating the others as abandoned.

The first contention of the defendant is that the information upon which he was tried does not sufficiently charge any offense, and should have been quashed. Section 2644 of the Revised Statutes, upon which the information was laid, reads as follows: "Whoever by himself, his servant, clerk or agent, or in any other manner has, keeps, exercises or maintains a gaming table or room, or gaming implements or aparatus, or house, booth, tent, shelter or other place for the purpose of gaming or gambling, or in any place of which he may directly or indirectly have charge, control or management, either exclusively or with others, procures, suffers or permits any person to play for money or other valuable thing at any game whatever, whether heretofore prohibited or not, shall be punished by imprisonment in the State prison not exceeding three years, or by fine not exceeding five

thousand dollars." The gist of the offense prohibited by this statute is, "the keeping and maintaining of a house, room or other place for the purpose of gaming or gambling." We think it is one of those cases where every allegation necessary to a full and proper charging of the offense is included within the language used in the statute itself, and that an indictment or information charging the offense in the language of the statute, as does the information here, is sufficient under the law. The statute here fully defines the offense that it creates, and in such cases it is ordinarily sufficient to charge the defendant with all the acts within the statutory definition, substantially in the words of the statute, without further expansion. 1 Bish. Crim. Pro. (3d ed.) sec. 611, and cases cited; State vs. Prescott, 33 N. H. 212; Campbell vs. State, 2 Tex. App. 187; Stoltz vs. People, 4 Scam. (Ill.) 168; Montee vs. Commonwealth, 3 J. J. Marsh. 132; State vs. Fulton, 19 Mo. 680; Wheeler vs. State, 42 Md. 563; Bish, Stat. Crimes (2d ed.) sec. 890; Groner vs. State, 6 Fla. 39.

It is next contended that the evidence in the cause does not make out any crime under the law. That betting upon horse racing is not specifically prohibited by our law, and that the keeping of a house, room or other place where nothing is done but selling pools, or receiving money for bets upon horse races, is not within the prohibition of the statute quoted, and does not fall within the meaning of the terms, "gaming or gambling," that the statute prohibits. The section of the Revised Statute quoted above, under which this information is laid, comprises the substance of section one of Chapter 3764 laws, approved June 7th, 1887. The title of the original act is: "An act to

suppress gambling houses and gambling." Whether the laying of wagers or bets of money or other valuable thing upon the event of a horse race is gaming or gambling, and whether the keeping of a house or room for this purpose is within this statute, depends upon the technical meaning of the words gaming or gambling. The best definition of the word "gaming" we have found is by Judge Caruthers in the case of Bell vs. State, 5 Sneed (Tenn.) 507, *viz:* "Gaming is an agreement between two or more, to risk money on a *contest* or *chance* of any kind, where one must be *loser*, and the other gainer." A most apt definition of gambling, adopted by Anderson, in his Law Dictionary, is by Judge Thompson, in Brua's Appeal, 55 Pa. St. 294, text 298, as follows: "Anything which induces men to risk their money or property without any other hope of return than to get for nothing any given amount from another, is gambling, and demoralizing to the community, no matter by what name it may be called. It is the same, whether the promise be to pay on the color of a card, or the fleetness of a horse, and the same numerals indicate how much is lost and won in either case, and the losing party has received just as much for the money parted with in the one case as in the other, *viz:* nothing at all." Bishop, in the second edition of his work on Statutory Crimes, sec. 858 says that "In general, subject possibly to a few exceptions, yet not many, the words gaming and gambling in our statutes are similar in meaning; and either one comprehends the idea, that, by a bet, by chance, by some exercise of skill, or by the transpiring of some event unknown until it occurs, something of value is, as the conclusion of promises agreed, to

29

be transferred from a loser to a winner, without which latter element there is no gaming or gambling.'' The consensus of the better opinions, is, that the wagering, betting or laying of money or other thing of value upon the transpiring of any event whatsoever, whether it be upon the result of a game of chance, or upon a contest of skill, strength, speed or endurance, whereby one party gaines and the other loses something for nothing, whether the parties betting be the actors in the event upon which their wager is laid or not, is gaming or gambling within the meaning of these acts. State vs. Smith, Meigs (Tenn.) 99, S. C. 33 Am. Dec. 132; Garrison vs. McGregor, 51 Ill. 473; Bew vs. Harston, L. R. 3 Q. B. Div. 454; Queen vs. Ashton, 1 Ellis & B. (72 Eng. C. L.) 286; Commonwealth vs. Taylor, 14 Gray (Mass.), 26; Edwards vs. State, 8 Lea (Tenn.), 411; Tatum vs. Strader, 23 Ill. 493. The purpose and intent of the section of the statute under discussion was to prohibit, not the gaming or gambling itself, but the *keeping of a house* or other place for any manner of gaming or gambling. If money or other thing of value is staked or wagered therein, upon any result or event whatsoever, such house falls within the inhibition of this statute, whether the means adopted for the decision of the question as to who is the winner or loser of the amount wagered be a game prohibited by law or not. State vs. Stripling, (Ala.), 21 South. Rep. 409. Such being our construction of the statute, we think that the evidence in this case fully sustains the charge made in the information. Indeed, the evidence of the defendant himself as a witness in the case completely makes out the case against him under the statute. In this we are supported by the following cases, exactly similar in their facts:

Swigart vs. State, 154 Ill. 284, 40 N. E. Rep. 432; People vs. Weithoff, 93 Mich. 631, 53 N. W. Rep. 784; S. C. 51 Mich. 203, 16 N. W. Rep. 442.

It is next contended that this statute makes a distinction between a principal and an agent, and that the defendant here was charged as principal, and could not be convicted when the proof showed that he kept and conducted the house as agent merely for other parties who were his principals, and that the court erred in excluding evidence offered to show that he acted only as agent in keeping and conducting the house for other parties. There is no merit in this contention. Section 2645 of the Revised Statutes, immediately following the one under which the information is laid, provides as follows: "Whoever acts as servant, clerk, agent or employe of any person in the violation of the preceding section shall be punished in the manner and to the extent therein mentioned." The result of the two sections, taken together, is to make all parties concerned in the keeping of a gambling house *principals*, whether in the conduct of same the one acts as agent or clerk of another, or on his own behalf as principal. The first two sections makes the principal liable whether he conducts the establishment in person, or has it conducted for him by an agent, clerk, or servant. When conducted by an agent, clerk or servant, the second of the two quoted sections makes such agent, clerk or servant a principal in the crime equally punishable with his employer, and it is not necessary to indict or charge him as agent, but he can be informed against as principal and convicted upon proof showing that he violated the law in the capacity of agent for another. It was not error, therefore, to exclude the proffered evidence

tendered for the purpose of showing that the defendant acted as agent for other parties, since it furnished no defense whatever. Wooten vs. State, 24 Fla. 335, 5 South. Rep. 39; Commonwealth vs. Gannett, 1 Allen (Mass.) 7, S. C. 79 Am. Dec. 693; State vs. Bugbee, 22 Vt. 32; Commonwealth vs. Hadley, 11 Met. (Mass.) 66; Hays vs. State, 13 Mo. 246; State vs. Bryant, 14 Mo. 340; Roberts vs. O'Connor, 33 Me. 496; 2 Bish. Crim. Pro. (3d ed.) sec. 2.

Divers instructions of law were requested by the defendant and refused, and their refusal is urged as error. There was no error in their refusal. The refused instructions contained propositions diametrically opposed to the interpretation of the statute herein contained, and the court below was right in refusing them. Some testimony was admitted over the defendant's objection, that, we think, was improper upon the ground that it was hearsay, but upon the whole case we think that it was harmless, as there was an abundance of competent proof, uncontradicted, upon the same points touched by the erroneously admitted evidence; and finding no material error in the record, the judgment of the court below is hereby affirmed.