H. P. REINMILLER, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Division B.

Opinion Filed March 9, 1927.

1. The evidence considered and construed to show plainly the wagering of money upon the result of the contests of speed of dogs, which contests are conducted by the Association of which the plaintiff in error was manager.

2. Horse racing and dog racing are neither prohibited by statute of this State and neither is the one or the other gambling or a game of chance *per se.*

3. Held that the procedure which is shown by the evidence in this case in the selling of certificates which entitle the holder to participate in a purse in the event that the ticket purchased is on the winning dog, which purse is created by other persons buying like certificates on the same dog and other dogs in the race, when indulged in by the so-called investors in the so-called certificates, results in the actual wager of money or other thing of value that the purchaser of the ticket will be successful in selecting the winner of the race.

4. The terms *gaming* and *gambling,* as used in the statute to suppress gambling houses, are similar in meaning. The wagering, betting or laying of money or other thing of value upon the transpiring of any event whatsoever, whether it be upon the result of a game of chance, or upon a contest of skill, strength, speed or endurance, whereby one party gains and the other loses something for nothing, whether the parties betting be the actors in the event upon which their wager is laid or not, is gaming or gambling within the meaning of this statute.

5. The purpose and intent of the section of the statute under discussion was to prohibit, not the gaming or gambling itself, but the *keeping of a house* or other place for any manner of gaming or gambling. If money or other thing of value is staked or wagered therein, upon any result or event whatsoever, such house falls within the inhibition of this statute, whether the means adopted for the decision of the question as to who is the winner or loser of the amount wagered be a game prohibited by law or not.

A Writ of Error to the Criminal Court of Record for Duval County; James M. Peeler, Judge.

Affirmed.

*Marks, Marks & Holt, Wm. A. Hallowes, Jr.,* and *Miles W. Lewis,* for Plaintiff in Error;

*Shutts & Bowen,* as Amici Curiae.

*J. B. Johnson,* Attorney General, and *Roy Campbell,* Assistant, for the State.

Buford, J.—In this case plaintiff in error was informed against in the Criminal Court of Record of Duval County, Florida, the information containing two counts and being as follows:

"IN THE NAME AND BY AUTHORITY OF THE STATE OF FLORIDA; L. D. Howell, County Solicitor for the County of Duval prosecuting for the State of Florida in the said County under oath, information makes that H. P. Reinmiller of the County of Duval and State of Florida on the eleventh day of June in the year of our Lord, one thousand nine hundred and twenty-isx in the County and State aforesaid, did then and there unlawfully and feloniously have, keep, exercise and maintain a certain place commonly known as the Jacksonville Kennel Club in Duval County, Florida, which said place was then and there kept, exercised and maintained by him, the said H. P. Reinmiller, for the purpose of gaming and gambling on races run by dogs; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Florida.

## SECOND COUNT.

And for a second count of this information, your informant aforesaid upon his oath aforesaid further information makes that H. P. Reinmiller, of the County of Duval and State of Florida on the eleventh day of June in the year of our Lord one thousand nine hundred twenty-six, in the County and State aforesaid, being then and there the President of The Jacksonville Kennel Club, a corporation, did then and there unlawfully and feloniously have, keep, exercise and maintain a certain place commonly known as The Jacksonville Kennel Club, in Duval County, Florida, for the purpose of gaming and gambling for money and other things of value, on the result of contests of speed of certain animals, to-wit, dogs; contrary to the form of the Statute in case made and provided, and against the peace and dignity of the State of Florida."

The accused was arraigned and pleaded not guilty to the information. He was tried before a jury and found

guilty in the general verdict and sentenced under the first count of the information to pay a fine of $150.00 and costs and in default thereof to be confined in the county jail at hard labor for a period of five months; and under the second count he was sentenced to pay a fine of $100 and costs. From this judgment and sentence writ of error was taken. There were five assignments of error, as follows:

1. The Trial Court erred in refusing to grant the motion of the plaintiff in error, H. P. Reinmiller, to instruct the jury to find the defendant not guilty on the ground that the evidence is not sufficient to support a verdict of guilty.

2. The Trial Court erred in refusing to set aside the verdict rendered in this case and to grant plaintiff in error, H. P. Reinmiller, a new trial upon the ground that the evidence is insufficient to support the verdict.

3. The Trial Court erred in refusing to set aside the verdict and grant plaintiff in error a new trial on the ground that the verdict is contrary to the law.

4. The Trial Court erred in refusing to set aside the verdict and grant plaintiff in error a new trial on the ground that the verdict is contrary to the law and the evidence.

5. The Trial Court erred in denying the motion of the defendant for a new trial."

The assignments of error are addressed to the sufficiency of the evidence. If it may be said that there was a lack of sufficient evidence to show the guilt of the defendant at the close of the State's case, the defendant voluntarily took the stand and supplied the deficiencies which existed in testimony up to that time. The probative force of the testimony, when taken as a whole, shows that the defendant managed and operated what is known as a dog race track in Duval County, Florida, and that in connection with this

track he directed and managed the operation of certain booths where pools were made on the races run by the dogs and that for this service he and his associates took compensation in the sum of 10% of the amount received at the booths. As we understand the testimony it shows that the manner of operating the business was as follows: The accused and his associates constructed or procured a race track built for the purpose of racing dogs, that in each race a number of dogs are entered and a prize is posted by the association to be awarded to the owner of each the 1st, 2nd and 3rd dog in the order of running the race, the 1st dog earns 60% of the prize, the 2nd dog 30% of the prize and the 3rd dog 10% of the prize. Admittance is charged to see the race and if the matter stopped here there might be no violation of the laws of this State. But, it does not so stop. The association erects a number of booths and at these booths those persons who wish to do so may deposit money. It is called by the association an investment in the earnings of a certain dog, but the evidence shows that this is not true. At each booth one may purchase tickets at $2.00 each on any dog. If there are eight dogs in the race only three can win. The winners are called Straight, Place and Show, respectivelly. Let us assume that 110 people make so-called "investments" in a race. They each deposit $2.00 and each take "Straight" tickets. The "pot" would amount to $220.00. We will then assume that 10 of those people "invested" in what proved to be the fastest dog. When the race is over $22.00 of the $220.00 is taken down by the association and the other $198.00 is divided equally between the 10 people who picked the winner and the other 100 people have contributed the profits of the investments of each of those 10 people and none of the 100 people, so buying tickets on other dogs to win, participate in the profits. This can not be termed an interest

in the dog or an interest in the earnings of the dog, as is attempted by the printed matter appearing on the ticket, which reads as follows:

"STRAIGHT
1007
JACKSONVILLE
KENNEL CLUB

This certificate entitles holder to one proportionate share of the earnings
less expenses. Such proportionate share shall be upon the basis of one to the entire number of the certificates sold on the race, less expenses. Such expense shall be deducted from the entire proceeds from the sale of such certificates.
GREYHOUND RACING & BREEDING ASS'N,

Agent."

It is plainly the wagering of money upon the result of the contests of speed of dogs, which contests are conducted by the association.

As hereinbefore stated, horse racing and dog racing are neither prohibited by statute of this State, and neither is the one or the other gambling or a game of chance *per se.* Section 5514, Revised General Statutes of Florida, provides as follows:

"Whoever stakes, bets or wagers any money or other thing of value upon the result of any trial or contest of skill, speed or power or endurance of man or beast, or whoever receives in any manner whatsoever any money or other thing of value staked, bet or wagered or offered for the purpose of being staked, bet or wagered, by or for any other person upon any such result, or whoever knowingly becomes the custodian or depository of any money or other thing of value so staked, bet or wagered upon any such result, or whoever aids or assists, or abets in any manner in any of such acts, all of which are hereby forbidden, shall be guilty

of gambling, and shall be punished by imprisonment not exceeding six months or by fine not exceeding five hundred dollars, or by both such fine and imprisonment."

It cannot be denied that whoever goes to the booth and buys one of these so-called "investment" certificates thereby stakes the price of the ticket, to-wit, $2.00, that the dog on which he has bought the ticket will win the race. He has staked that $2.00 against a proportionate part of whatever amount others may in like manner place on some other dog in that same race. Therefore, it must follow that under the statutory definition as contained in the above quoted section of the statute, persons making such so-called "investments" are guilty of gambling and that such gambling is shown by the evidence in this case to have been done in a "booth" or "place" provided and maintained by the accused and his associates for that purpose.

Section 5499, Revised General Statutes of Florida, provides as follows:

"Whoever by himself, his servant, clerk or agent, or in any other manner has, keeps, exercises or maintains a gaming table or room or gaming implements or apparatus, or house, booth, tent, shelter or other place for the purpose of gaming or gambling or in any place of which he may directly or indirectly have charge, control of management, either exclusively or with others, procures, suffers or permits any person to play for money or other valuable thing at any game whatever, whether heretofore prohibited or not, shall be punished by imprisonment in the State prison not exceeding three years or by fine not exceeding five thousand dollars."

It is not needful that we should revert to the opinions found in the Reports from other Courts defining gambling to ascertain whether or not when money or anything of value is wagered upon the result of the contest of speed of

dogs or upon the result of a race between dogs, such act may be held to be gambling, because the statute has obviated that necessity by specifically defining such conduct to be gambling. Neither is it needful to revert to the opinions written by other Courts to ascertain whether or not the procedure when indulged in by the so-called *investors* in the so-called *certificates* results in the actual wager of money or other things of value, that the purchaser of the ticket will be successful in selecting the winner of the race. Indeed, it is so clear that such is a fact that the subterfuge resorted to becomes amusing. This Court, in the case of McBride v. The State, 39 Fla. 442, 22 Sou. 711, held:

''The terms *gaming* and *gambling,* as used in this statute to suppress gambling houses, are similar in meaning. The wagering, betting or laying of money or other thing of value upon the transpiring of any event whatsoever, whether it be upon the result of a game of chance, or upon a contest of skill, strength, speed or endurance, whereby one party gains and the other loses something for nothing, whether the parties betting be the actors in the event upon which their wager is laid or not, is gaming or gambling within the meaning of this statute.''

That opinion was written by Mr. Chief Justice TAYLOR, and in it is to be found the further statement peculiarly applicable to this case:

''The purpose and intent of the section of the statute under discussion was to prohibit, not the gaming or gambling itself, but the *keeping of a house* or other place for any manner of gaming or gambling. If money or other thing of value is staked or wagered therein, upon any result or event whatsoever, such house falls within the inhibition of this statute, whether the means adopted for the decision of the question as to who is the winner or loser of the amount wagered be a game prohibited by law or not. State v.

Stripling (Ala.), 21 South. Rep. 409. Such being our construction of the statute, we think that the evidence in this case fully sustains the charge made in the information. Indeed, the evidence of the defendant himself as a witness in the case completely makes out the case against him under the statute. In this we are supported by the following cases, exactly similar in their facts: Swigart v. State, 154 Ill. 284, 40 N. E. Rep. 432; People v. Weithoff, 93 Mich. 631, 53 N. W. Rep. 784; S. C. 51 Mich. 203, 16 N. W. Rep. 442.''

We see no reason why the construction enunciated by Mr. Justice TAYLOR should not continue to prevail, and the judgment is affirmed.

WHITFIELD, P. J., AND TERRELL, J., concur.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion.