388 So.2d 1232 (1980)
Margaret McKENNEY, Appellant,
v.
STATE of Florida, Appellee.
No. 57375.
Supreme Court of Florida.
October 2, 1980.
Dan R. Warren of Judge & Warren, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., and Gregory C. Smith, Asst. Atty. Gen., Daytona Beach, for appellee.
ADKINS, Justice.
By direct appeal, Margaret McKenney attacks the validity of her conviction of violating *1233 Florida's assignation statute and her sentence as a habitual misdemeanant. §§ 796.07(3)(a) & 775.084, Fla. Stat. (1977). The trial court directly passed upon and upheld the constitutionality of these statutes. It also denied a motion to suppress certain live witness testimony crucial to the conviction. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972). We refer to the parties as they appeared in the trial court.
Sometime around ten or eleven o'clock in the evening on December 23, 1978, two police officers observed the defendant and two other women standing in front of a convenience store. From past experience, the officers were aware of the defendant's status as a "known prostitute" in the area. She made a hitchhiking motion and flagged down a car. She and the sole occupant of the car, the male driver, then drove some two hundred yards to her house where they both went inside for about twenty minutes. When the man left the house, an officer approached him and asked for identification. As a result of their conversation the man, Mr. Whitley, agreed to testify that the defendant had engaged in oral sex with him for $20.00. At the same time Mr. Whitley was being questioned, the other officer went to the house to arrest the defendant.
The defendant was tried, convicted, and adjudicated guilty of assignation on May 24, 1979. At sentencing, on July 17, 1979, the trial court found the defendant was a habitual misdemeanant. In so doing the court relied on a prior conviction for prostitution obtained in a proceeding in which the defendant had not been represented by counsel.
The defendant first contends that the assignation statute is unconstitutionally vague and overbroad. U.S. Const., amend. I; art. I, § 9, Fla. Const. The statute makes it illegal:
To offer to commit, or to commit, or to engage in, prostitution, lewdness, or assignation.
§ 796.07(3)(a), Fla. Stat. (1977). There is also a legislative definition:
The term "assignation" shall be construed to include the making of any appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement.
§ 796.07(1)(c), Fla. Stat. (1977). We have recently upheld other portions of section 796.07 against similar constitutional challenges. See, e.g., Whitted v. State, 362 So.2d 668 (Fla. 1978); Tatzel v. State, 356 So.2d 787 (Fla. 1978); and Bell v. State, 289 So.2d 388 (Fla. 1973). We now add the crime of assignation to that list of constitutionally firm prohibitions.
A vagueness and overbreadth challenge merits a three-fold analysis. First, the statute cannot infringe upon constitutionally protected First Amendment freedoms of expression and association. Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). "Assignation," as it is defined and understood in common usage, means, inter alia:
[A]n appointment of time and place for a meeting esp. [sic] for illicit sexual relations ...
Websters Third New International Dictionary, 132 (1976). Even speech or expressive behavior which at first blush seems fully protected may be proscribed where it "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). The instant statutory prohibition is limited to conduct which produces lawless action, i.e. prostitution or lewdness. § 796.07(3)(a), Fla. Stat. (1977). It is therefore free of any infirmity with regard to activities protected by the First Amendment.
Our second inquiry is whether the statute is phrased so that persons of common intelligence have adequate notice as to the nature of the proscribed conduct. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Sandstrom v. Leader, 370 So.2d 3 (Fla. 1979). A person whose conduct clearly falls within the statute's prohibition cannot reasonably be said to have been denied adequate notice, however. Broadrick v. Oklahoma, 413 U.S. 601, *1234 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). We find that the defendant in this case lacks standing to complain of lack of notice since the facts adduced at trial reveal conduct which manifestly falls within the ambit of the assignation statute. Mr. Whitley testified: "I had seen her [the defendant] and I drove up and we just agreed to do what we did" (referring to the subsequent sexual act).
Lastly, a statute may be worded so loosely that it leads to arbitrary and selective enforcement by vesting undue discretion as to its scope in those who prosecute. Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). There is no evidence of arbitrary or capricious enforcement in the record of this case. Absent such a showing, we find that the language describing the crime of assignation is precise enough to guide law enforcement officials in determining what conduct constitutes prohibited conduct. We hold that the assignation statute is constitutional. See Summers v. Anchorage, 589 P.2d 863 (Alaska 1979).
The defendant's second major contention is that Mr. Whitley's testimony should not have been used against her. The trial court found that the initial detention of Whitley was illegal and that the detective's offer of "either be a witness or be a defendant" rendered Whitley's statements involuntary and coerced. The defendant argues that these statements and Whitley's live testimony were incurably and directly tainted by the illegality and therefore subject to exclusion as "fruit of the poisonous tree." U.S. v. Ceccolini, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); U.S. v. Cruz, 581 F.2d 535 (5th Cir.1978). The trial court properly rejected this argument on the ground that the defendant did not have standing to object to violations of Whitley's constitutional rights. Alderman v. U.S., 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); U.S. v. Fredericks, 586 F.2d 470 (5th Cir.1978); Winchell v. State, 362 So.2d 992 (Fla. 3d DCA 1978). In U.S. v. Fredricks the testimony of Ehrlich, an unindicted coconspirator, was obtained in violation of her Fourth, Fifth, and Sixth Amendment rights. The Fifth Circuit noted:
But whether or not Ehrlich's rights were infringed by her arrest, her interrogation, or the compulsion of her testimony is immaterial to this appeal. For the simple fact of the matter is that appellants' rights were not violated by any of those governmental acts and therefore suppression of Ehrlich's testimony is not required to protect or vindicate their rights.
586 F.2d at 480. As in Fredericks, our holding that the defendant lacks standing to assert a probable violation of Whitley's constitutional rights does "not sanction gross police misconduct against third parties in the overly zealous pursuit of criminal convictions." 586 F.2d at 481. The questionable police tactic of offering a person the Hobson's choice of being arrested or testifying against another does not fall in this instance to the level of
third-degree physical or psychological coercion that might prompt us to disregard altogether the societal interest in law enforcement by excluding the highly probative testimony of a nondefendant.
Id. (footnote omitted). This situation is not comparable to those involving a valid offer of immunity from a state attorney or other authorized person. § 914.04-.05, Fla. Stat. (1977).
Inasmuch as we find defendant's conviction valid, we must now turn to her sentence as a habitual misdemeanant. The United States Supreme Court has recently ruled that an uncounseled misdemeanor conviction cannot be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term. In Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), the Court relied on two prior decisions which held that an uncounseled conviction could not support a deprivation of liberty. Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) and Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). The Court did not *1235 hold that all uncounseled convictions were per se invalid for purposes of imposing a sentence of imprisonment, only those which could not themselves have supported incarceration. 446 U.S. at 224-226, 100 S.Ct. at 1587, (Marshall, J., concurring specially). Baldasar's prior conviction occurred after a proceeding in which he was not only unrepresented by counsel, but "did not formally waive any right to counsel." Id. at 223, 100 S.Ct. at 1586. In the prior conviction in the case at bar, the defendant declined the judge's offer of counsel and signed a written waiver of her right to counsel. The trial court at the instant sentencing proceeding found that the prior conviction was accompanied by an intelligent, knowing, and voluntary waiver.
The conviction and sentence are affirmed.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
ENGLAND, J., concurs in result only.