693 So.2d 1075 (1997)
STATE of Florida, Appellant,
v.
Jack S. DE LA LLANA, Appellee.
No. 96-04260.
District Court of Appeal of Florida, Second District.
May 16, 1997.
*1076 Robert A. Butterworth, Attorney General, Tallahassee, and Diana Bock, Assistant Attorney General and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellant.
Thomas A. Smith, Tampa, for Appellee.
LAZZARA, Judge.
The state of Florida appeals a county court order dismissing a criminal charge embodied in a notice to appear which determined that section 893.13(7)(a)5., Florida Statutes (1995), which formed the basis for the charge, was unconstitutionally vague and overbroad. We have jurisdiction. See Fieselman v. State, 566 So.2d 768, 770 (Fla.1990) (district court of appeal has jurisdiction to review county court order declaring state statute constitutionally invalid). Because we conclude that the statute is neither overbroad nor impermissibly vague in all of its applications and thus is facially constitutional, we reverse and remand for further proceedings.
The state charged the appellee, Jack De La Llana, by notice to appear with violating section 893.13(7)(a)5., which makes it unlawful for any person:
To keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances, or which is used for keeping or selling them in violation of this chapter.
(Emphasis added.)[1] According to the allegations of the notice, the appellee, in his capacity as the manager of a licensed bar business known as the "Level 2," violated the statute by keeping or maintaining those premises when controlled substances (cocaine) were used, kept, or sold there by patrons of the business while he was present. For purposes of our decision, we must accept these well-pleaded allegations as true and as the "hypothesis" for the order granting the motion to dismiss. See United States v. National Dairy Prods. Corp., 372 U.S. 29, 33 n. 2, 83 S.Ct. 594, 598 n. 2, 9 L.Ed.2d 561 (1963).
The appellee filed a motion to dismiss alleging that the statute was impermissibly vague and overbroad because it failed to define the terms "keep or maintain" thus causing "human beings of common intelligence to necessarily guess or speculate as to the meaning of these terms and differ as to their application." He contended, therefore, that the statute "violates the equal protection of law and results in the unconstitutional deprivation of due process." Following a very brief hearing consisting of nothing more than a recapitulation of the appellee's motion and a perfunctory discussion of the law, the trial court orally granted the motion. Its announced reason for doing so was based on a "finding that [section] 893.13(7)(a)5. is unconstitutional in that it fails to apprise people sufficiently as to what conduct is prohibited in that it fails to define the terms `keep' or `maintain.'" The trial court later rendered a written order in which it again emphasized *1077 that the absence of a definition in the statute as to the terms "keep or maintain" "leads human beings of common intelligence to necessarily guess or speculate as to the meaning of these terms and could lead to a differing of their application." The trial court concluded, therefore, that the statute is "impermissibly vague and overbroad" and that "[b]y failing to define these key terms, the statute violates the equal protection of the law and results in the unconstitutional deprivation of due process."
We begin our resolution of this appeal by limiting the focus of the analysis we must employ in deciding the constitutionality of section 893.13(7)(a)5. As noted, the appellee successfully challenged the facial validity of the statute below on the twofold basis of vagueness and overbreadth. Our first task, therefore, "is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc. 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnote omitted); see also Schall v. Martin, 467 U.S. 253, 269 n. 18, 104 S.Ct. 2403, 2412 n. 18, 81 L.Ed.2d 207 (1984) (outside the limited First Amendment context, a criminal statute may not be attacked as overbroad).
In this case, we are unable to fathom any constitutionally protected conduct falling within the penumbra of the First Amendment which would be implicated by this statute. See Borras v. State, 229 So.2d 244, 246 (Fla.1969) (holding that the possession and use of marijuana in the privacy of one's home does not enjoy the protection of the First Amendment, does not abridge any rights under the Fourteenth Amendment, and does not violate the right to privacy), cert. denied, 400 U.S. 808, 91 S.Ct. 70, 27 L.Ed.2d 37 (1970). Thus, if the possession and use of marijuana within the inner sanctum of a private residence does not enjoy the protective mantle of the First Amendment, then it can hardly be argued that a legislative enactment prohibiting the keeping or maintaining of a place where illegal substances such as cocaine are used, kept, and sold implicates conduct falling within protective scope of that amendment.
Furthermore, it is clear to us that the terms "overbroad" and "vague" were used synonymously by the appellee and the trial court even though they are separate and distinct doctrines of constitutional dimension. See Southeastern Fisheries Ass'n v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla.1984). In that case, the supreme court cautioned courts and lawyers against using these terms interchangeably and explained that the doctrine of overbreadth applies only if legislation is susceptible of application to conduct protected by the First Amendment and that the doctrine of vagueness, which has a broader application, was developed to assure compliance with the due process clause. Id. Accordingly, it would be inappropriate for us in deciding this case to engage in a constitutional analysis using the principles of the overbreadth doctrine because the statute clearly does not reach activities protected by the First Amendment and is, therefore, not constitutionally overbroad. Id.
In light of our limited analytical focus, we turn to our recent decision in State v. Barnes, 686 So.2d 633 (Fla. 2d DCA 1996), in which we explained the various principles that a court must apply when confronted with a constitutional vagueness challenge to a criminal statute in which First Amendment rights and the doctrine of overbreadth are not implicated. In accord with Barnes and the cases it relied upon, we must first examine the appellee's conduct in the record before us in evaluating his vagueness claim before we may analyze other applications of the statute. Id. at 637. If the record establishes that the appellee engaged in some conduct clearly prohibited by the plain and ordinary meaning of the statute, then he is foreclosed from mounting a successful vagueness challenge to the statute and from complaining, because of a lack of standing, of its vagueness as applied to the hypothetical conduct of others. Id.[2] Essentially, therefore, *1078 we must decide whether the appellee has met his "heavy burden" of establishing that "no set of circumstances exists under which [the statute] would be valid" because the fact that "it might operate unconstitutionally under some conceivable set of circumstances is insufficient" to demonstrate that the statute is "`facially' unconstitutional." United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987) (footnote omitted).
Measured by these principles, we first conclude that the underlying premise of the trial court's order that the lack of a statutory definition for the terms "keep or maintain" renders the statute unconstitutionally vague and thus subject to differing applications was analytically flawed. It is a well-settled principle of constitutional jurisprudence that "[t]he legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague." State v. Hagan, 387 So.2d 943, 945 (Fla.1980). In the absence of such a definition, a court may resort to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term, see Gardner v. Johnson, 451 So.2d 477, 478 (Fla. 1984), as well as case law which has construed the term in the context of another statute. See Tingley v. Brown, 380 So.2d 1289, 1290 (Fla.1980).
In line with Gardner, we first look to the dictionary definitions of "keep" and "maintain" by using the same source that the supreme court used in Green v. State, 604 So.2d 471, 473 (Fla.1992), to ascertain the meaning of an undefined statutory term. That source defines "keep" in one of its applications, which is appropriate to this case, to mean "conduct, manage ...: carry on [keep] a business ...." Merriam-Webster's Third New International Dictionary 1235 (1986). It also defines "maintain" in one of its applications to mean "carry on." Id. at 1362; see also Black's Law Dictionary 868, 953 (6th ed.1990) (defining "keep" to mean "[t]o maintain, carry on, conduct, or manage; as, to `keep' a bawdy house, gaming table, nuisance or the like" and "maintain" to mean "carry on"). We conclude, therefore, that the plain and ordinary meaning of these terms as used in the statute clearly contemplates conduct consisting of the conducting, managing, and carrying on of the affairs of a business enterprise.
Our conclusion is further buttressed by utilizing the principles of Tingley and analyzing how the terms "keep" and "maintain" have been construed by an appellate court in the context of another criminal statute, section 849.01, Florida Statutes (1995), which prohibits in part the keeping or maintaining of a place for the purpose of gambling, and which part has remained virtually unchanged since its enactment in 1887. See ch. 3764, § 1, at 145, Laws of Fla. (1887). In Perlman v. State, 269 So.2d 385 (Fla. 4th DCA 1972), the court reviewed the sufficiency of the evidence to sustain a conviction under this part of the statute. It first noted that in order to prove this particular offense the state must establish that a defendant had "ownership or control of a place" where *1079 habitual gambling has occurred with the defendant's knowledge, consent, or direction. Id. at 387 (emphasis added). The court further observed that the gravamen of the offense is not gambling as such or habitual use of property for gambling but instead "is the maintenance or keeping of a place for gambling purposes." Id. (emphasis added). Based on this statutory analysis, it affirmed the conviction of one of the appellants relying in part on evidence that he was the manager of the premises. Id. at 388-89; see also Reinmiller v. State, 93 Fla. 462, 111 So. 633 (1927) (affirming conviction of appellant under same part of statute whom evidence established was the manager and operator of premises). Thus, as construed within the context of an analogous criminal statute, the concept of "keep or maintain" contemplates conduct involving control over a place in a managerial capacity.
We conclude from this analysis, coupled with the well-pleaded allegations of the state's notice to appear, that the appellee has failed to demonstrate that section 893.13(7)(a)5. did not give him fair notice of what type of conduct was forbidden by the statute and thus was impermissibly vague as applied to him, as well as in all of its applications. A person like the appellee, who occupies the status of manager of a business establishment and, as such, controls, conducts, manages, and carries on the affairs of that business, must certainly know and understand that in that capacity he engages in the conduct of "keeping or maintaining" the location of that establishment within the plain and ordinary meaning of the statute, especially when he is present.
We also conclude, based on the record before us, that there is a complete absence of any evidence to support the trial court's blanket finding that the impreciseness of the statute is susceptible to differing applications and thus violates the constitutional guarantee of equal protection of the law. See, e.g., Corn v. State, 332 So.2d 4, 8 (Fla.1976) (holding that under the facts of the case there was no evidence that the statute violated the right to equal protection by being arbitrarily and discriminatorily applied to appellant); State v. Efthimiadis, 690 So.2d 1320, 1321 (Fla. 4th DCA 1997) (finding no evidence that the statute was applied in a discriminatory, selective fashion based on an "unjustifiable" or "arbitrary classification") (quoting Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)). Absent such a showing, we are not prepared to say that this statute is "worded so loosely that it leads to arbitrary and selective enforcement by vesting undue discretion as to its scope in those who prosecute." McKenney v. State, 388 So.2d 1232, 1234 (Fla.1980). As we noted in Barnes, any future application of a statute which may engender concrete problems of a constitutional nature may be appropriately considered only if and when they arise. 686 So.2d at 638. Moreover, given the strong constitutional presumption which the law affords a legislative act, a court may not automatically invalidate a statute "simply because difficulty is found in determining whether certain marginal offenses fall within [its] language." National Dairy Prods. Corp., 372 U.S. at 32, 83 S.Ct. at 597; accord Sandstrom v. Leader, 370 So.2d 3, 6 (Fla.1979); see also Bell v. State, 289 So.2d 388, 390 (Fla.1973) (criminal statute need not furnish detailed plans and specifications to comply with constitutional requirements).
In view of our conclusions, we, as well as the appellee, are prohibited from delving into the hypothetical realm of considering whether there exists the possible risk that section 893.13(7)(a)5. may be unconstitutionally applied to fact patterns different from the one posed in this case. Barnes, 686 So.2d at 637, 639. Accordingly, because this statute is not impermissibly vague in all of its applications, as demonstrated by the record in this case, we hold that it is facially constitutional. We, therefore, reverse the trial court's order dismissing the state's notice to appear and remand for further proceedings.
In doing so, we urge trial courts to be mindful of the heavy burden which a defendant must overcome when mounting a constitutional vagueness challenge to a criminal statute which does not purport to reach constitutionally protected conduct under the First Amendment. To succeed in such a challenge, a defendant must do more than simply establish that the statute, as preliminarily *1080 evaluated within the context of the defendant's conduct before the court, is vague only in the sense that it requires a person to conform his or her actions to an imprecise but comprehensible course of conduct. See Flipside, Hoffman Estates, Inc., 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7. Instead, a defendant must shoulder the "heavy burden" of proving that the statute is facially unconstitutional in that there exists no set of circumstances in which it can be constitutionally applied, see Salerno, 481 U.S. at 745, 107 S.Ct. at 2100, that is, it specifies no comprehensible standard of conduct at all such that it has no core. See Flipside, Hoffman Estates, Inc., 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7.[3] Thus, as we noted in Barnes, "outside the limited context of the First Amendment in which the overbreadth doctrine is recognized and applied, a defendant who only establishes that the statute `might operate unconstitutionally under some conceivable set of circumstances' fails to demonstrate that the statute is wholly invalid." 686 So.2d at 637 (quoting Salerno, 481 U.S. at 745, 107 S.Ct. at 2100). We are confident that strict adherence to these basic principles of constitutional adjudication will result in a more cautious and studied approach by a trial court when deciding a vagueness challenge to a presumptively constitutional criminal statute. See State v. Kahles, 644 So.2d 512, 513 (Fla. 4th DCA 1994) (urging the bench and bar to follow the step-by-step process set out in Flipside, Hoffman Estates, Inc. in cases in which a criminal statute is attacked as unconstitutional on its face), approved, 657 So.2d 897 (Fla. 1995).
Accordingly, for the reasons expressed, we reverse the order under review and remand this case for further proceedings.
Reversed and remanded for further proceedings.
THREADGILL, C.J., and DANAHY, J., concur.
NOTES
[1] A person who violates this provision commits a misdemeanor of the first degree. See § 893.13(7)(b), Fla. Stat. (1995). Hence, the state's prosecution of the appellee by a notice to appear is procedurally appropriate. See Fla. R.Crim.P. 3.140(a)(2) (authorizing prosecutions for misdemeanors by a notice to appear provided for in Florida Rule of Criminal Procedure 3.125).
[2] This traditional rule prohibiting a person to whom a statute may constitutionally be applied from challenging the statute on the basis that it may conceivably be applied in an unconstitutional fashion to others in factual situations not before the court is relaxed, however, when the statute affects conduct protected by the First Amendment. See New York v. Ferber, 458 U.S. 747, 767-769, 102 S.Ct. 3348, 3360-3361, 73 L.Ed.2d 1113 (1982). In that situation, the overbreadth doctrine, with its concern for the "sensitive nature of protected expression," confers standing on a person "to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." 458 U.S. at 768-769, 102 S.Ct. at 3361. The underlying reason for allowing standing within this limited context is to "avoid[] making vindication of freedom of expression await the outcome of protracted litigation." Dombrowski v. Pfister, 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965); see also Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973) (consequence of "departure from traditional rules of standing in the First Amendment area is that any enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression"); accord Young v. American Mini Theatres, Inc., 427 U.S. 50, 59-60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310 (1976) (exception to traditional rule of standing to raise constitutional issue reflects a judgment that the very existence of some statutes may cause persons not before a court to refrain from engaging in constitutionally protected speech or expression).
[3] This concept of a statute's lack of a "core" was explored in Brown v. State, 629 So.2d 841 (Fla. 1994), in which the supreme court found that the undefined phrase "public housing facility" in section 893.13(1)(i), Florida Statutes (Supp. 1990), rendered that statute unconstitutionally void for vagueness. In that case, the court determined that this phrase was the "sticking point" of the "heart of the statute" because it did not "give citizens fair warning about what conduct [was] forbidden" and was "so imprecise that it [was] impossible to tell from the statute's plain language what the Legislature intended to target." Id. at 843 (emphasis added) (footnote omitted). It concluded, therefore, that because the statute "[did] not specify a standard of conduct, citizens and law enforcement must guess at what the statute prohibits" rendering it "impermissibly vague in all applications." Id.