686 So.2d 633 (1996)
STATE of Florida, Appellant,
v.
Larry William BARNES, Jr., Appellee.
No. 96-01047.
District Court of Appeal of Florida, Second District.
November 27, 1996.
Rehearing Denied January 17, 1997.
*635 Robert A. Butterworth, Attorney General, Tallahassee, and Erica M. Raffel, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Cynthia J. Dodge, Assistant Public Defender, Bartow, for Appellee.
LAZZARA, Judge.
The state of Florida appeals the trial court's order declaring section 316.1935(2), Florida Statutes (1995), unconstitutionally vague. Because we conclude that the statute as applied to the alleged conduct of the appellee is not facially void for vagueness, we reverse and remand for further proceedings.
In 1994, the Florida legislature amended section 316.1935, Florida Statutes (1993), which prohibited fleeing or attempting to elude a police officer. One of the amendments added subsection 2 which enhanced the penalty for such conduct from a misdemeanor of the first degree to a felony of the third degree under certain circumstances. Ch. 94-276, § 1, at 1956, Laws of Fla. This subsection provides as follows:
Any person who, in the course of unlawfully fleeing or attempting to elude a law enforcement officer in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed on the vehicle with siren and lights activated pursuant to subsection (1), having knowledge of an order to stop by a duly authorized law enforcement officer, causes the law enforcement officer to engage in a high-speed vehicle pursuit commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(Emphasis added.)
The appellee was charged with violating this statute in the first count of a two-count information. He filed a boilerplate motion to dismiss this count, specifically contending that the underscored phrase "causes the law enforcement officer to engage in a high-speed vehicle pursuit" was unconstitutionally vague and thus violated his right to due process. The appellee did not claim, however, that the statute threatened First Amendment interests. At a hearing on the motion, the appellee and the state agreed that in lieu of testimony the trial court could consider a probable cause affidavit detailing the basic facts of the case. As reflected in the trial court's subsequent written order granting the motion, the basic facts were (1) a law enforcement officer observed the appellee travelling at 68 m.p.h. in a 45-m.p.h. speed zone; (2) when the officer entered the roadway behind the appellee, the appellee made a U-turn and accelerated to a speed of 100 m.p.h.; and (3) the officer in pursuing the appellee reached a speed of 80 m.p.h. before deciding to break off the pursuit.[1]
In declaring the statute unconstitutionally vague, the trial court undertook an extensive analysis of the critical statutory phraseology which the appellee made the focus of his argument. It first rejected the appellee's claim that the undefined phrase "causes the law enforcement officer to engage in" is vague because it vests discretion in a law enforcement officer to decide whether to undertake a "high-speed vehicle pursuit," the essential element necessary for the existence *636 of the felony. The trial court determined instead, based on the facts before it, that the appellee's decision to flee created the crime just as much as the officer's decision to pursue.
The trial court found a serious constitutional problem, however, with the undefined phrase "high-speed vehicle pursuit" in two respects. It first determined that this language established no "bright line" as to what conduct the statute prohibited. In support of this conclusion, the trial court delineated several hypotheticals in an attempt to accentuate the vagueness problem it found inherent in the statute: "Is a 30 m.p.h. chase through a crowded mall parking lot a felony or misdemeanor? Does it depend on the time of day? What about 75 m.p.h. on an interstate highway?" It next determined that the statute lacked clarity with respect to whether the words "high-speed" referred to the actions of a fleeing defendant or a pursuing officer. The trial court concluded, therefore, that because of these defects the statute was impermissibly vague in all of its applications such that it had "no hard core that can fairly be said to include the Defendant's conduct." As a consequence, it dismissed count one of the information.
We begin our analysis by emphasizing that we are confronted with a constitutional vagueness challenge to a criminal statute in which First Amendment interests are not implicated.[2] We must, therefore, examine this challenge in light of the facts before us and judge the constitutionality of the statute on an as-applied basis because "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts at hand." United States v. Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). In line with this undertaking, we must be guided by several well-established principles of constitutional adjudication, one of which is that "[t]here is a presumption of constitutionality inherent in any statutory analysis." Scullock v. State, 377 So.2d 682, 683-684 (Fla.1979).
We begin by noting that our principal focus is whether the appellee established below that the statute "is so vague and lacking in ascertainable standards of guilt that, as applied [to him], it failed to give `a person of ordinary intelligence fair notice that his contemplated conduct is forbidden * * *.'" Palmer v. City of Euclid, Ohio, 402 U.S. 544, 545, 91 S.Ct. 1563, 1564, 29 L.Ed.2d 98 (1971) (quoting United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954)). See also United States v. National Dairy Prods. Corp., 372 U.S. 29, 32-33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963) ("Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.") (emphasis added). If he failed to sustain this burden then his vagueness claim grounded on the due process clause must fail in that "[o]bjections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988) (emphasis added). See also State v. Hamilton, 388 So.2d 561, 562 (Fla.1980) (defendant whose conduct clearly falls within statutory prohibition may not complain of the absence of notice).
Furthermore, given the strong presumption of constitutionality which the law affords a legislative act, a statute is not "automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within [its] language." National Dairy Prods. Corp., 372 U.S. at 32, 83 S.Ct. at 597. When a person has received fair warning from a criminal statute that certain conduct is prohibited, that person may not attack the vagueness of the statute simply because it *637 does not give "similar fair warning with respect to other conduct which might be within its broad and literal ambit." Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974). This firmly embedded rule of constitutional adjudication is closely aligned with the principle that constitutional rights are personal and may not be asserted vicariously. Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). Hence, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker, ___ U.S. at 756, 94 S.Ct. at 2562. Accordingly, in evaluating a vagueness claim in which First Amendment rights are not at issue, "[a] court should [first] examine the complainant's conduct before analyzing other hypothetical applications of the law." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).
Additionally, in order for a defendant to sustain a vagueness challenge to a criminal statute in which First Amendment rights are not involved, it is not enough to show that the legislature could have used more precise language in drafting the statute. The fact that a legislative body may have chosen clearer language to achieve the desired statutory goal does not render the statute actually drafted unconstitutionally vague. United States v. Powell, 423 U.S. 87, 94, 96 S.Ct. 316, 321, 46 L.Ed.2d 228 (1975); see also Bell v. State, 289 So.2d 388, 390 (Fla.1973) (criminal statute need not furnish detailed plans and specifications of conduct prohibited to comply with constitutional requirements). A corollary to this fundamental principle is that "[t]he legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague." State v. Hagan, 387 So.2d 943, 945 (Fla.1980). In the absence of such a definition, the plain and ordinary meaning of the term can be ascertained by reference to a dictionary. Gardner v. Johnson, 451 So.2d 477, 478 (Fla.1984).[3]
Finally, a defendant who establishes only that the statute is vague in the sense that it requires a person to conform his or her conduct to an imprecise but comprehensible standard cannot prevail on a vagueness challenge. Flipside, Hoffman Estates, 455 U.S. at 495, n. 7, 102 S.Ct. at 1191 n. 7. Instead, a defendant must shoulder the "heavy burden" of establishing that the statute is facially unconstitutional in that there exists no set of circumstances in which the statute can be constitutionally applied, United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987), that is, it specifies no comprehensible standard of conduct at all such that it has no core. Flipside, Hoffman Estates, 455 U.S. at 495, n. 7, 102 S.Ct. at 1191, n. 7. Thus, outside the limited context of the First Amendment in which the overbreadth doctrine is recognized and applied, a defendant who only establishes that the statute "might operate unconstitutionally under some conceivable set of circumstances" fails to demonstrate that the statute is wholly invalid. Salerno, 481 U.S. at 745, 107 S.Ct. at 2100.
Consistent with these principles of constitutional adjudication, we must, therefore, in evaluating appellee's vagueness challenge, first examine his conduct as reflected in the record before we are allowed to analyze other applications of the statute. If the record demonstrates that the appellee engaged in some conduct clearly proscribed by the plain and ordinary meaning of the statute, then he cannot successfully challenge it for vagueness nor complain of its vagueness as applied to the hypothetical conduct of others.
In line with this analysis, we first conclude that the trial court was correct in determining that the phrase "causes the law enforcement officer to engage in" was not unconstitutionally vague as applied to the appellee's alleged conduct. The stipulated facts clearly show that the officer's decision to pursue was not an unbridled discretionary act but instead was directly linked to the appellee's decision to flee. While we recognize that a statute, because of its wording, *638 may lead to arbitrary and selective enforcement by vesting undue discretion as to its scope in those who arrest, there is no evidence before us suggesting that the statute has been arbitrarily or capriciously enforced. Absent such a showing, we are not prepared to say that the language "causes the law enforcement officer to engage in" does not convey sufficient guidance to an officer enforcing the statute. See McKenney v. State, 388 So.2d 1232, 1234 (Fla.1980). Moreover, the fact that the statute may possibly not give sufficient guidance to arresting officers with respect to the hypothetical conduct of other fleeing defendants should be dealt with in the context of those factual settings, if and when they arise. See Flipside, Hoffman Estates, 455 U.S. at 504, 102 S.Ct. at 1196 ("Although it is possible that specific future applications ... may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise.") (quoting Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 52, 86 S.Ct. 1254, 1264, 16 L.Ed.2d 336 (1966)).
We conclude, however, after judging the appellee's alleged conduct in the light of the plain and ordinary meaning of the statute, that the trial court erred in determining that the terms "high-speed vehicle pursuit" and "high-speed" were impermissibly vague in all of their applications. As to the phrase "high-speed vehicle pursuit," the trial court, before embarking on a series of hypotheticals designed to demonstrate the vagueness of this term, should have evaluated its plain and ordinary meaning within the context of the facts before it, as it did when considering the phrase "causes the law enforcement officer to engage in." Although this term is undefined, this fact alone, as noted, does not render it unconstitutionally vague as lacking in precision. Instead, because the essence of the term's plain and ordinary meaning has its genesis in the critical modifying adjective "high," we may resort to a dictionary to determine this word's commonly understood meaning.
We look, therefore, to the same reference source that the supreme court used in Green v. State, 604 So.2d 471, 473 (Fla.1992), to ascertain the meaning of an undefined statutory term. That source defines "high" in one of its applications, which is appropriate to this case, as "of relatively great degree, size, or amount ... ..." Merriam-Webster's Third New International Dictionary 1067 (1986) (emphasis added). Furthermore, as acknowledged by appellee, a synonym of "high" is the adjective "elevated." Our reference source defines "elevated" in one of its applications, which is also appropriate to this case, as "increased especially] abnormally (as in degree or amount) ..." Id. at 735 (emphasis added).[4]
Measuring appellee's alleged conduct against these commonly understood standards, it is clear to us that the statute gave him fair warning that his act of fleeing from a law enforcement officer, which in turn caused that officer to attain a speed of 80 m.p.h. in a 45-m.p.h. speed zone while pursuing the appellee, would fall within the ambit of the type of conduct which the legislature sought to prohibit, i.e., the act of a fleeing motorist which causes a law enforcement officer to engage in a vehicle pursuit of that motorist at a "relatively great and abnormal degree" of speed. Accordingly, "[w]hile doubt as to the applicability of the language in marginal fact situations may be conceived, we think that the statute gave [appellee] adequate warning that [his conduct] was a criminal offense." Powell, 423 U.S. at 93, 96 S.Ct. at 320.
We also disagree with the trial court's determination that the statute is unclear regarding whether the phrase "high-speed" applies to the actions of a fleeing defendant or a pursuing officer. A plain reading of the statute leads us to conclude that the focus of "high-speed" unambiguously applies to the speed of the officer and not the fleeing defendant so that this aspect of the statute is likewise not impermissibly vague as applied to appellee's alleged conduct. Unquestionably, *639 when the appellee made a U-turn and then accelerated to a speed of 100 m.p.h. in a 45-m.p.h. speed zone in attempting to flee from the officer, he had adequate notice from the statute that his actions would result in the type of conduct which the statute was designed to prohibit, i.e., the act of a fleeing motorist which causes a "law enforcement officer" to attain a high rate of speed.
We conclude, therefore, that the phrase "causes the law enforcement officer to engage in a high-speed vehicle pursuit" is not unconstitutionally vague. In our view, this language is not so imprecise that it is impossible to determine from its plain and ordinary meaning what the legislature intended to prohibit. Cf. Brown v. State, 629 So.2d 841, 843 (Fla.1994) (undefined statutory phrase's imprecision made it impossible to tell what legislature intended to target). Accordingly, because section 316.1935(2) is not impermissibly vague in all of its applications, as demonstrated by the facts of this case, and because it adequately specifies a comprehensible standard of prohibited core conduct, we hold that it is facially constitutional.
As a consequence of our holding, we are constrained by fundamental principles of appellate review from deciding whether the hypotheticals posed by the trial court would fall within the proscriptions of section 316.1935(2). Sandstrom v. Leader, 370 So.2d 3, 6 (Fla.1979); see also Broadrick, 413 U.S. at 610-611, 93 S.Ct. at 2915 (except in limited circumstances, such as the area of the First Amendment, courts should scrutinize the constitutionality of a statute only as applied to the facts before it because "under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws".). Thus, as previously noted, the fact "[t]hat marginal cases might exist where doubts may arise as to whether there may be prosecution under [this statute] does not render the enactment unconstitutionally vague." Sandstrom, 370 So.2d at 6.
Furthermore, although one might argue that the statutory terms we have individually addressed may pose the possible risk of unconstitutional application to a fact pattern different from that of the appellee's, "the precise limitations to be placed on the words in question can best be specified when actual cases requiring such interpretation are presented." State v. Dye, 346 So.2d 538, 542 (Fla.1977). Moreover, as the United States Supreme Court observed in rejecting a vagueness claim to a criminal statute in which First Amendment overtones were not an issue, "[e]ven as to more doubtful cases than that of respondent, we have said that `the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.'" Powell, 423 U.S. at 93, 96 S. Ct at 320 (quoting Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913)) (emphasis added).
We conclude, therefore, based on this record, that the trial court erred in declaring section 316.1935(2) facially unconstitutional because the appellee failed to sustain his heavy burden of establishing that this statute is impermissibly vague in all of its applications. Having failed to meet this burden, he cannot complain about the vagueness of the law as applied to the conduct of others. Accordingly, we reverse the trial court's order, reinstate count one of the information, and remand for further proceedings.
Reversed and remanded for further proceedings.
FRANK, A.C.J., and BLUE, J., concur.
NOTES
[1] We accept these facts but only for the purpose of reviewing the propriety of the trial court's decision. See United States v. National Dairy Prods. Corp., 372 U.S. 29, 33 n. 2, 83 S.Ct. 594, 598 n. 2, 9 L.Ed.2d 561 (1963).
[2] For this reason, we are not concerned with the doctrine of overbreadth and its governing principles because this doctrine applies only to legislation which is susceptible of application to conduct protected by the First Amendment. Southeastern Fisheries Ass'n, Inc. v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla. 1984). Moreover, in this case, we can discern nothing within the penumbra of the First Amendment which would be implicated by appellee's alleged conduct of fleeing from a law enforcement officer.
[3] In the absence of a statutory definition, a court may also resort to case law or related statutory provisions which define the term. Hagan, 387 So.2d at 945. In this case, however, our research has failed to uncover any case law or related statutes which define the terms at issue.
[4] We note that the supreme court, in analyzing the meaning of a word in the Florida Constitution, followed the same approach of using a synonym to help define the word. Russell v. State, 71 Fla. 236, 240, 71 So. 27, 28 (1916).