892 So.2d 1221 (2005)
STATE of Florida, Appellant,
v.
Bob NICHOLS and Damon A. Nichols, Appellees.
No. 1D04-4287.
District Court of Appeal of Florida, First District.
February 15, 2005.
*1222 William N. Meggs, State Attorney; Matthew A. Smith, Assistant State Attorney, Zachary Ward, Assistant State Attorney and Charlie Crist, Attorney General; Bryan Jordan, Assistant Attorney General, Tallahassee, for Appellant.
Ronald A. Mowrey, Esquire, Ellen C. Pappas, Esquire and Donna S. Biggins, Esquire of Mowrey & Biggins, P.A., Tallahassee, for Appellees.
BENTON, J.
This is a direct appeal from a county court order that ruled section 370.093(2)(b), Florida Statutes (2000), "unconstitutionally vague and unenforceable." See Art. V, § 4(b)(1), Fla. Const. We reverse, with directions that appellees' judgments of conviction and $250 fines be reinstated.

I.
The charges grew out of events on a fishing expedition in the early morning hours of August 31, 2000, while Florida Fish and Wildlife Conservation Commission Officer Donald Craig Duval was on patrol in the nearshore waters of Franklin County. Acting on a tip, Officer Duval *1223 motored his launch to the Turkey Point Shoal, within 100 to 150 yards of a vessel with a spotlight on board.
Looking through binoculars, he could see Bob and Damon A. Nichols standing near the stern, silhouetted against the spotlight, "a glistening of water and what appeared to be a net with fish entangled in it." For three hours, as he watched, the vessel turned at intervals, tracing a circular course. As the fishing came to an end, Officer Duval maneuvered his boat closer, and, when he was within 60 or 70 yards, saw the Messrs. Nichols, standing in shallow water, one of them making a hammering motion.
Officer Duval called for assistance. After the Nicholses had regained the vessel, he turned on his blue light and came alongside. A smallish square in the aft deck (partially hidden by a piece of carpet) looked as if it had been sawed out to make a crude hatch cover. He saw a hammer on the deck. For the first time he was able to make out who the Nicholses were. Only after they all reached shore did Officer Duval board the fishing boat, check the registration, and inspect the vessel at close quarters.
On the deck lay a dry, matted nylon net (of less than 500 square feet with "legal" mesh size). Completely free of debris, this net "obviously had not been used." The hammer Officer Duval had seen when he stopped the boat was nowhere to be found. But he spotted "a piece of monofilament[[1]] strand" sticking up through one of the cracks in the square of deck serving as a hatch cover, now nailed shut. Stowed below deck, it developed, was a gill or entangling net. Consisting of wet, untwisted, synthetic filament, it was laden with fish scales, spongy grass and other debris.
Also on board was a large cooler containing over a thousand pounds of black mullet and a few speckled trout. Many of the mullet had been "marked" as if their gills had gotten hung up on a net. The catch, including some 700 or 800 mullet, exceeded the 51-fish recreational bag limit.
The Nicholses were arrested on several charges, including the unlawful use of a gill or entangling net made of monofilament, in violation of section 370.093(2)(b), Florida Statutes (2000), which became count two, and possession of mullet in *1224 excess of the recreational bag limit while in possession of a gill or entangling net, which became count four of the information the State eventually filed.

II.
A county court jury returned verdicts finding the appellees guilty of counts two and four.[2] After the presiding judge stated he would take their post-trial, ore tenus motion for judgment of acquittal on these counts under advisement, they submitted a second, written motion for judgment of acquittal.[3] The written motion argued at length that section 370.093(2)(b), Florida Statutes (2000), is unconstitutional, citing the learned county court judge's prior rulings[4] to that effect. To the extent the written motion argued that section 370.093(2)(b) was unconstitutional, we deem it filed pursuant to Rule 3.610(a), Florida Rules of Criminal Procedure (authorizing motion for arrest of judgment on grounds that the "information on which the defendant was tried is so defective that it will not support a judgment of conviction").[5]See Harris, 439 So.2d at 269; State v. Gray, 435 So.2d 816, 818 (Fla.1983). The county court granted the appellees' motions as to both counts[6] on January 24, 2002.
In granting the defendants' motion as to count two, the county court declared section 370.093(2)(b) unconstitutional. The State sought to appeal this ruling to circuit court, which purported to decide[7] the *1225 question of the statute's constitutionality, notwithstanding the limitation on appellate circuit court jurisdiction embodied in section 26.012(1), Florida Statutes (2002), which provides:
Circuit courts shall have jurisdiction of appeals from county courts except appeals of county court orders or judgments declaring invalid a state statute or a provision of the State Constitution and except orders or judgments ... certified... to be of great public importance and ... accepted ... for review.
(Emphasis supplied.) See Art. V, § 5(b), Fla. Const. ("The circuit courts shall have ... jurisdiction of appeals when provided by general law."); Fieselman v. State, 566 So.2d 768, 770 n. 1 (Fla.1990) ("Circuit courts lack jurisdiction to hear appeals from county court decisions declaring statutes invalid."). Seeking review of rulings against them by the circuit court on count two (as well as count four) the Messrs. Nichols filed a petition for writ of certiorari here.
By order entered September 28, 2004, on the State's motion in the certiorari proceeding, we quashed the circuit court's order insofar as it concerned the county court's disposition of count two, reinstated the appeal "concerning the county court's disposition of count two charging [the Nicholses] with violating section 370.093(2)(b), Florida Statutes" and transferred the reinstated appeal here from circuit court.[8]

III.
The statute under which Bob and Damon A. Nichols were found guilty proscribes the use in Florida waters of "gill or entangling nets," defined by reference to the state constitution,[9] and of any other net "constructed wholly or partially of monofilament or multistrand monofilament material," unless allowed by the Marine Fisheries Commission's rules. The statute provides:
The use of gill or entangling nets of any size is prohibited, as such nets are defined in s. 16, Art. X of the State Constitution. Any net constructed wholly or partially of monofilament or multistrand monofilament material, other than a hand thrown cast net, or a handheld landing or dip net, shall be considered to be an entangling net within the prohibition of s.16, Art. X of the State Constitution unless specifically authorized by rule of the commission. Multistrand monofilament material shall not be defined to include nets constructed of *1226 braided or twisted nylon, cotton, linen twine, or polypropylene twine.
§ 370.093(2)(b), Fla. Stat. (2000). We have previously upheld the constitutional definition  which is not challenged here  against a claim of vagueness. See State v. Kirvin, 718 So.2d 893, 896-97 (Fla. 1st DCA 1998) ("We first consider the challenge to article X, sections 16(b)(1) and (c)(1), Florida Constitution. As the State asserts, these provisions are not unconstitutionally vague.").
In deciding whether section 370.093(2)(b) is unconstitutional, we examine the question de novo on this revived appeal, mindful that "[t]here is a presumption of constitutionality inherent in any statutory analysis." Scullock v. State, 377 So.2d 682, 683-684 (Fla.1979). Statutes are presumed to be constitutional. Todd v. State, 643 So.2d 625, 627 (Fla. 1st DCA 1994).
In its order granting appellees' motions below for judgments of acquittal, the county court ruled that
the term "multistrand monofilament" is an oxymoron, a self-contradicting phrase that enhances the confusion. Criminal laws must be clear and leave no doubt as to their meaning. By prohibiting all nets made of "monofilament" and "multistrand monofilament" (excluding nets made of certain materials) without defining these terms, this statute is ambiguous and does not specify with clarity what conduct it purports to outlaw.
The State called an expert witness to offer an opinion as to the meaning of the term, "monofilament." However, opinion testimony by its nature cannot be sufficient to satisfy the constitutional requirement that a criminal statute be clear on its face and notice the public, without ambiguity, as to the conduct it seeks to prohibit.
The county court concluded, in short, that section 370.093(2)(b) is unconstitutionally vague for failure to give reasonable notice of the conduct it prohibits.
Count two charged that the Nicholses "did use a gill or entangling net (defined as made of monofilament material) in violation of Section 370.093(2b) [sic], Florida Statutes." Although, on the evidence adduced, appellees might have been convicted of using a gill or entangling net without regard to its monofilament construction, the State alleged the use of a net made of monofilament and was therefore required to prove it beyond a reasonable doubt. See Lewis v. State, 53 So.2d 707, 708 (Fla.1951) ("No principle of criminal law is better settled than that the State must prove the allegations set up in the information or the indictment."); Atwell v. State, 739 So.2d 1166, 1167 (Fla. 1st DCA 1999). Count two made no mention, however, of "multistrand monofilament material," as opposed to "monofilament material."
Here as in State v. Barnes, 686 So.2d 633, 636 (Fla. 2d DCA 1996) (footnote omitted), "we are confronted with a constitutional vagueness challenge to a criminal statute in which First Amendment interests are not implicated." See generally Travis v. State, 700 So.2d 104, 105 (Fla. 1st DCA 1997).
We must, therefore, examine this challenge in light of the facts before us and judge the constitutionality of the statute on an as-applied basis because "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts at hand." United States v. Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).
Barnes, 686 So.2d at 636. Applying these principles in the present case, we need reach no question concerning "multistrand monofilament." See State v. Hagan, 387 So.2d 943, 945 (Fla.1980). Neither Mr. *1227 Nichols was charged with use or possession of a net made of "multistrand monofilament." The record is devoid of evidence that either used "multistrand monofilament" nets.[10]
A legislative enactment is unconstitutional for vagueness if it fails to provide persons of ordinary intelligence fair notice of what conduct is forbidden, inviting arbitrary enforcement against the unwary. Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Brown v. State, 629 So.2d 841, 842 (Fla.1994). On the other hand, a statute "need not attain ideal linguistic precision." Jennings v. State, 667 So.2d 442, 444 (Fla. 1st DCA), aff'd, 682 So.2d 144, 145 (1996). If the statutory language conveys a sufficiently definite warning as to what conduct is proscribed, the statute is not unconstitutionally vague. Brown, 629 So.2d at 842. Genuine doubt about a statute's meaning should always be resolved in favor of the citizen and against the state. State v. Wershow, 343 So.2d 605, 608 (Fla.1977).
The validity of section 370.093(b)(2), Florida Statutes (2000), turns on whether it is unconstitutionally vague because the term "monofilament" is ambiguous. A penal statute's failure to define a key term itself does not render the statute unconstitutionally vague. Brown, 629 So.2d at 843; Hagan, 387 So.2d at 945. When a statute employs a term without defining it, the term's common or ordinary meaning is looked to. State v. J.H.B., 415 So.2d 814, 815 (Fla. 1st DCA 1982). The term "monofilament" is defined as "a single untwisted synthetic filament (as of nylon) made in varying diameters for use in textiles, hosiery, and screens or as bristles, fishing lines, and sutures." Webster's Third New Int'l Dictionary, Unabridged 1462 (1971). We find nothing obscure or perplexing about this definition as applied to the facts of this case.
The trial court erred in ruling section 370.093(2)(b), Florida Statutes (2000), unconstitutional. The term "monofilament" has a fixed and definite meaning. Although not the commonest word, "monofilament" precisely describes something with which fishermen are familiar. See generally Hagan, 387 So.2d at 946 (holding that the terms "trawl net" and "trawling operation" have a definite meaning as used in the fishing industry). The statute is not so vague that persons of ordinary intelligence must guess at its meaning. It is sufficiently clear to allow reasonable and uniform enforcement. The Messrs. Nichols had adequate notice that using a net made of fishing line was against the law, unless authorized by Marine Fisheries Commission rules. That may well explain why they stowed the net they had been using unlawfully under the deck, and nailed the hatch cover shut.

IV.
Appellees argue that, even if section 370.093(2)(b), Florida Statutes (2000), is constitutional, the trial court correctly granted their motion for judgment of acquittal because the State failed to present substantial, competent evidence making out a prima facie case as to count two. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) (holding that "if a trial court reaches the *1228 right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record"). See also Art. V, § 4(b)(3), Fla. Const. ("To the extent necessary to dispose of all issues in a cause properly before it, a district court of appeal may exercise any of the appellate jurisdiction of the circuit courts.").
Appellees' argument proceeds largely from the premise that the State did not introduce a gill or entangling net into evidence. But the State put on direct evidence that the Nicholses were using a net to fish, and adequate, circumstantial evidence that the net they were using was not the legal net on deck, but the wet, debris-fouled, monofilament net below. The witnesses' credibility and the weight of the evidence are questions for the jury. Donaldson v. State, 722 So.2d 177, 182 (Fla.1998); Lynch v. State, 293 So.2d 44, 45 (Fla.1974); State v. Brockman, 827 So.2d 299, 302 (Fla. 1st DCA 2002).

V.
Accordingly, the county court's order on appellees' motion for judgment of acquittal as to count two is reversed. The case is remanded with directions that appellees' judgments of conviction on count two be reinstated in accordance with the jury's verdicts, that the $250 fines imposed for the convictions on count two be likewise reinstated, and that the judgments and sentences be reduced to writing.
ALLEN and DAVIS, JJ., concur.
NOTES
[1] The State presented ample evidence at trial that the term "monofilament" had a definite meaning, well known among fishermen. Three witnesses testified that "monofilament" means "fishing line." Officer Duval testified:

Since I was a child, it is sold as monofilament. It is sold as monofilament spool line. If you go buy a spool of line from a store, you go buy a 17-pound triolein monofilament fishing line. That is the same material.
...
... I am testifying that I could tell you that in my experience fishing this and being on the Fish and Wildlife Commission and also buying and being an avid fisherman and buying monofilament line that this is a single strand monofilament sold as that. And it is also sold as monofilament gill net if you were to purchase it.
Another witness testified:
Monofilament net in a layman's way of identifying it is, is we all know what monofilament fishing line is. And this net was constructed out of that kind of material. It is very obvious when you see it. It is basically plastic single strand material that is weaved together to make a net.
A third state's witness testified that the industry standard for monofilament is "single strand like fishing line. That's what it is. It is plastic fishing line."
A defense witness testified concerning "a monofilament net. I have seen those nets too. So what it is, it is a rectangular net made out of a single strand of nylon," and confirmed that historically gill nets were made out of monofilament.
[2] At the close of the State's case, the county judge had granted motions for judgment of acquittal as to counts one and three. These rulings are not reviewable. See Hudson v. State, 711 So.2d 244, 246 (Fla. 1st DCA 1998) ("Read in the context of the double jeopardy provisions in [the state and federal constitutions, section 924.07(1)(j), Florida Statutes] plainly contemplates appeal from a judgment of acquittal only if the judgment of acquittal follows a guilty verdict.").
[3] To the extent these motions argued that the evidence adduced at trial was insufficient as a matter of law to support the jury's verdicts, we deem them submitted pursuant to Rule 3.380(a) and (c), Florida Rules of Criminal Procedure. Insufficiency of the evidence has been held to be the only ground on which a judgment of acquittal may be granted. State v. Harris, 439 So.2d 265, 269 (Fla. 2d DCA 1983).
[4] State v. Hartsfield, No. 99-000713MMMA (Fla. Franklin Cty. Ct. Oct. 6, 2000), State v. Hartsfield, No. 99-000712MMMA (Fla. Franklin Cty. Ct. Oct. 6, 2000) and State v. Monroe, No. 99-000713MMMB (Fla. Franklin Cty. Ct. Oct. 6, 2000).
[5] A defendant can also, and more efficiently, challenge a statute under which she is charged as unconstitutional by motion to dismiss under Rule 3.190, Florida Rules of Criminal Procedure. See State v. Strickler, 712 So.2d 1218, 1218 (Fla. 2d DCA 1998). On review in the present case, the circuit court treated the trial court's ruling on the constitutional question as a dismissal, even though neither defendant moved to dismiss on this ground.
[6] As to count four, the county court ruled that the evidence was insufficient to prove a violation of section 370.093(2)(b), whereupon the State took an appeal to circuit court. On appeal, the circuit court concluded the evidence had been sufficient to support the verdicts as to count four, reversed the order granting judgments of acquittal as to count four, and remanded the case to county court with directions to reinstate the judgments entered in accordance with the jury's guilty verdicts as to count four. The Messrs. Nichols, appellees in circuit court, then sought review here of, inter alia, the circuit court's ruling that the evidence was sufficient as to count four by filing a petition for writ of certiorari, which we are today denying in a companion case. Nichols v. State, Case No. 1D03-1764 (Fla. 1st DCA Feb. 15, 2005).
[7] The circuit court ruled  albeit without jurisdiction to do so  that section 370.093(2)(b) was constitutional, purporting on that basis to reverse the county court, and remand with directions to enter or reinstate judgment on count two.
[8] To obtain review of the county court's grant of appellees' motion as to count two and concomitant declaration that section 370.093(2)(b) was unconstitutional, the State should have appealed directly here originally, instead of to circuit court. See Art. V, § 4(b)(1), Fla. Const. See § 924.07(1)(c) & (j), Fla. Stat. (2002); see generally Exposito v. State, 891 So.2d 525 (Fla.2004).
[9] The Florida Constitution forbids, as a constitutional minimum, the use of gill nets and entangling nets, which it defines as follows:

"gill net" means one or more walls of netting which captures saltwater finfish by ensnaring or entangling them in the meshes of the net by the gills, and "entangling net" means a drift net, trammell net, stab net, or any other net which captures saltwater finfish, shellfish, or other marine animals by causing all or part of heads, fins, legs, or other body parts to become entangled or ensnared in the meshes of the net, but a hand thrown cast net is not a gill net or an entangling net.
Art. X, § 16(c)(1), Fla. Const. The Florida Constitution also authorizes legislative restrictions on saltwater net fishing that exceed the constitutional minimum, when it provides that
nothing in this section prohibits the establishment by law or pursuant to law of more restrictions on the use of nets for the purpose of catching or taking any saltwater finfish, shellfish, or other marine animals.
Art. X, § 16(f), Fla. Const.
[10] This is not to say that the defense did not try to confuse the issue. The prosecutor protested during the voir dire examination of the State's fisheries expert,

But, Your Honor, the testimony in this case isn't about multistrand monofilament. It is about monofilament.... We are not too worried about multistrand monofilament. It doesn't matter in this case ... [A]ll I want him to do is be able to testify as to what monofilament is.