NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


STATE OF FLORIDA,                            )
                                             )
        Appellant,                       )
                                             )
v.                                           )       Case Nos.    2D16-2915
                                             )                    2D16-2917
CHRISTOPHER JAMES CARRIER and                )
WENDY B. CARRIER,                            )       CONSOLIDATED
                                             )
        Appellees.                       )
_____)

Opinion filed March 9, 2018.

Appeals from the Circuit Court for Polk
County; J. Dale Durrance, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Elba Caridad Martin,
Assistant Attorney General, Tampa,
for Appellant.

Michael N. Dicks of the Law Office of
Michael Dicks, P.A., Bartow, for Appellees.


SILBERMAN, Judge.

        In these consolidated appeals, the State challenges the orders that grant

the motions to dismiss filed by Christopher James Carrier and Wendy Carrier and

dismiss the charges against them in these prosecutions for fifty-six counts of forging,

counterfeiting, or altering an animal health document in violation of section 585.145(3),

Florida Statutes (2013 and 2014). The trial court determined that section 585.145(3) was unconstitutionally vague on its face and violated substantive due process. Based on our interpretation of the language in section 585.145(3), we determine that the statute requires a knowing alteration that results in a false or deceptive certificate and that the statute is not facially vague and does not violate substantive due process for criminalizing otherwise innocent conduct. Thus, we reverse and remand for further proceedings.

The State contends that the trial court erred in determining that section 585.145(3) is unconstitutionally vague on its face and violates substantive due process. The purpose of section 585.145 is "for the control, suppression, eradication, and prevention of the spread of contagious, infectious, and communicable disease and to protect animals in the state." § 585.145(1). Section 585.145(3) provides as follows:

> (3) A person who forges, counterfeits, simulates or alters, or who knowingly possesses, uses, presents or utters, any forged, counterfeited, altered or simulated official certificate of veterinary inspection or any other document relating to animal health requirements or substitutes, represents, or tenders an official certificate of veterinary inspection or any other document relating to animal health requirements of one animal for another animal commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(Emphasis added.) The operative charging documents against the Carriers allege that they "did forge, counterfeit, simulate or alter an official certificate of veterinary inspection or any other document relating to animal health requirements," with each count naming an identification number that appears to refer to a particular document. Earlier charging documents alleged that they also "did knowingly possess, use, present or utter, said forged, counterfeited, altered or simulated official certificate of veterinary inspection."

The Carriers each filed a motion to dismiss, both contending that section 585.145(3) violates substantive due process because that statute arbitrarily criminalizes innocent conduct and lacks a mens rea element. They argued the statute contained no requirement of guilty knowledge with respect to the alteration of an official certificate of veterinary inspection (certificate) and would make criminal an innocent or even helpful alteration of the certificate.

The Carriers also argued that the statute was void for vagueness because the term "alters" was not defined. In making their argument, the Carriers gave hypothetical examples of ways the certificate could be innocently altered such as whiting out portions, adding additional information to the forms such as a company's logo, or as the Carriers argue was done here, merely removing the vertical and horizontal lines within the text box so that more immunizations could fit on the form.

At the hearing on the motion, the State argued that the statute was constitutional as applied to the Carriers. The State also explained that it filed amended charging documents (the fourth amended as to Dr. Carrier and the third amended as to Ms. Carrier) after the motions to dismiss were filed. The amendments omitted the "possession language," and thus the cases cited in the motion regarding possession of an item without some type of intent were not applicable because the Carriers were "simply charged with forging, altering, counterfeiting, et cetera." A litigant may not challenge the constitutionality of a portion of a statute that does not affect the litigant. State v. Hagan, 387 So. 2d 943, 945 (Fla. 1980); Waterman v. State, 654 So. 2d 150, 153 (Fla. 1st DCA 1995). Thus, the Carriers cannot challenge the possession portion of

the statute, leaving their challenge to the portion of the statute regarding forging, counterfeiting, simulating, or altering a certificate.

The facts asserted at the hearing reflect that Dr. Carrier is a veterinarian who worked at his father's practice, Care Animal Clinic. Ms. Carrier owned a Petland franchise in Lakeland where she was selling puppies. When selling puppies, Ms. Carrier was required to provide a certificate of veterinary inspection. Ms. Carrier downloaded the certificate form and altered it. Dr. Carrier's clinic would examine and immunize the puppies. Dr. Carrier signed altered certificates for only the puppies at his wife's business. When he signed certificates for other businesses, he signed the correct forms.

The defense contended at the hearing that there were three things Ms. Carrier did to alter the certificate. First, she altered the text boxes for immunizations by removing the lines because all the immunizations would not fit on the form. In doing so, she included the dates and lot numbers instead of the names of the immunizations. Second, she used an older form that contained an older State seal. Third, the footer on the official form was deleted or cut off.

The State contended that it had "a little bit of a dispute with" the facts as presented by the defense. The State contended that the investigation began because unhealthy dogs were being sold from Ms. Carrier's establishment. The last six counts charged were for dogs that were purchased from Ms. Carrier's establishment and became sick and, in some cases, died. The first fifty counts were for puppies that had not been sold. The State contended the motive behind the alteration of the certificate was to "obfuscate what immunizations ha[d] been given to the dogs and what had not

been given to the dogs." In addition, the State asserted that Dr. Carrier was not licensed "to sign and authorize" certificates during the time period alleged.

The record contains the charging documents and probable cause affidavit. The affidavit reflects that in a sworn taped statement Ms. Carrier "admit[ted] to creating and forging/altering" the certificates. Dr. Carrier also admitted in a sworn taped statement that his wife "created and forged/altered" the certificates and that he was responsible for issuing the certificates. He had issued the correct certificates to other customers of the clinic, and "he was aware of the correct unaltered official form" but "only presents and issues the altered forms to his wife's business and animals."

The affidavit further states that the form must display the disease that the vaccine is targeting, such as rabies or canine distemper. By replacing the information with nondescript codes and numbers, the animal purchaser would not know the type of vaccines that had been given. By omitting the footer from the certificate, Ms. Carrier eliminated "the required state veterinary contact information" that would advise a purchaser whom to contact with questions relating to the form. Also omitted was "the distribution legend, form retention instructions and official form number."

After the hearing on the motion, the trial court entered orders granting the motions to dismiss and dismissing the charges. The trial court found that the statute had the potential to criminalize otherwise innocent conduct. The trial court also found that the statute was unconstitutionally vague on its face and violated the guarantee of substantive due process under the Fourteenth Amendment and under Article I, Section 9, of the Florida Constitution. The trial court found the word "alters" to be vague, as the

Carriers argued. The trial court also found the phrase "official certificate of veterinary inspection" to be vague, an argument that the Carriers did not make in the trial court.

**Substantive Due Process—Criminalizing Otherwise Innocent Conduct**

The Carriers argued that the statutory language prohibiting a person from altering a certificate violates substantive due process for criminalizing otherwise innocent conduct, such as the editing of a .pdf document available online, without requiring a mens rea, or criminal intent. The State contends that when the word "alters" in section 585.145(3) is read in context with the preceding words "forges, counterfeits, simulates," the word "alters" can be read to contain a mens rea requirement of alters with the intent to defraud.

Statutory interpretation is an issue of law that we review de novo. Wegner v. State, 928 So. 2d 436, 438 (Fla. 2d DCA 2006). The law gives a strong presumption in favor of the constitutionality of a statute. Id. The courts are required to construe a statute in a way that avoids declaring it unconstitutional. State v. Giorgetti, 868 So. 2d 512, 518 (Fla. 2004); Wegner, 928 So. 2d at 438. Offenses with no mens rea are disfavored, and a scienter element is often necessary to comply with due process requirements. Giorgetti, 868 So. 2d at 515, 518. In defining a crime, "the Legislature generally has broad authority to determine any requirement for intent or knowledge." Id. at 515. We first look to a statute's plain language to determine if the legislature included an intent requirement. Id. But even when a statute does not expressly state an intent element, "Florida courts ordinarily will 'presume that the Legislature intends statutes defining a criminal violation to contain a knowledge requirement absent an express

- 6 -

indication of a contrary intent.' " Wegner, 928 So. 2d at 439 (quoting Giorgetti, 868 So. 2d at 516).

In Giorgetti, the Florida Supreme Court construed sexual offender registration statutes to have a knowledge element so as to "include a requirement that the alleged offender knows of the obligation to register and maintain current addresses." 868 So. 2d at 520; see also Ramirez v. State, 113 So. 3d 28, 30 (Fla. 2d DCA 2012) (construing a statute that prevented felons from being employed at a bail bond agency to contain a mens rea requirement because absent the knowledge element the statute criminalized "otherwise innocent conduct, i.e., working at a clerical job"); Wegner, 928 So. 2d at 439 (construing a statute to require "knowledge by the accused that the person from whom or about whom he has received the computer transmissions is a minor").

The statute at issue here, section 585.145(3), does not expressly contain an intent element for one who alters a certificate. The statute applies to a person who "forges, counterfeits, simulates, or alters" a certificate. Id. The legislature has not made clear that it intended to dispense with a mens rea element with respect to one who alters a certificate. See Giorgetti, 868 So. 2d at 520. Thus, under Giorgetti, we construe the statute to mean that the alteration of the certificate was done knowingly as opposed to an accidental alteration of the certificate. But a knowing alteration could still include innocent conduct of making insignificant changes to the certificate.

The ordinary meaning of the word "alter" is " 'to change or modify' and to make 'different in some particular characteristic without changing it into something else.' " Newberger v. State, 641 So. 2d 419, 421 (Fla. 2d DCA 1994) (quoting New

York v. Versaggi, 629 N.E.2d 1034, 1038 (N.Y. 1994)). In construing the statute, we look at the word "alters" in context. "Under the doctrine of *noscitur a sociis* (a word is known by the company it keeps), one examines the other words used within a string of concepts to derive the legislature's overall intent." Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So. 2d 201, 205 (Fla. 2003); see also Stratton v. Sarasota County, 983 So. 2d 51, 56 (Fla. 2d DCA 2008).

The State relies on People v. Bratis, 141 Cal. Rptr. 45 (Cal. Ct. App. 1977), to argue that the placement of "alters" with "forges" and "counterfeits" reflects a legislative intent to require the alteration be done with an intent to defraud. In Bratis, the court considered two statutes, one prohibiting the alteration or counterfeiting of any parimutuel ticket and the other prohibiting the knowing possession of "any altered, forged, or counterfeit parimutuel ticket." 141 Cal. Rptr. at 48 (quoting Cal. Bus. & Prof. Code § 19667 (West 1974)). The defendants argued that the statutes failed to require the alteration be made with an intent to defraud. The court looked to the ordinary meaning of "alter" and also referred to California statutory definitions for alteration of a negotiable instrument and for forgery. Id. The court stated that alteration was contained within the statutory definition of forgery. Id. The court concluded that the juxtaposition of the words "counterfeit" and "forged" made "it clear that the alteration referred to and prohibited is an alteration with intent to defraud, and not a mere innocent mutilation of the parimutuel ticket." Id.

However, this court has declined to read a specific intent to injure or defraud into a statute. See State v. Koczwara, 837 So. 2d 591, 594 (Fla. 2d DCA 2003). In Koczwara, this court considered section 322.212(1)(a), Florida Statutes

(2001), which made it unlawful to knowingly possess "any blank, forged, stolen, fictitious, counterfeit, or unlawfully issued driver's license or identification card or any instrument in the similitude of a driver's license or identification card unless possession by such person has been duly authorized by the department." Id. at 593-94. This court explained that "[b]oth 'forged' and 'fictitious' denote unauthorized changes made to a document that cause the document to convey information that is not true. The core meaning of 'forgery' is 'falsely making or altering a writing.' Random House Unabridged Dictionary 751 (2d ed. 1993) (emphasis supplied)." Koczwara, 837 So. 2d at 593. This court concluded that a driver's license with a falsely altered license number is a forged or fictitious license under section 322.212(1)(a). Id.

The defendant argued that the State should be required to prove "a specific intent to injure or defraud." Id. at 594. This court stated that although the general prohibition against forgery in section 831.01, Florida Statutes (2001), expressly required "the forgery be committed 'with intent to injure or defraud,' " section 322.212 contained no similar requirement. Id. This court concluded that it would be improper to require the State to prove a specific intent to injure or defraud when the legislature did not provide for an element of specific intent. Id. (citing Reynolds v. State, 842 So. 2d 46, 49 (Fla. 2002) (stating the legislature's "broad authority to determine any requirement for intent in the definition of a crime")).

Florida's forgery statute provides that "[w]hoever falsely makes, alters, forges or counterfeits a public record . . . with intent to injure or defraud any person, shall be guilty of a felony of the third degree." § 831.01, Fla. Stat. (2017) (emphasis added). A more specific forgery statute provides that "[w]hoever falsely makes, alters,

forges, or counterfeits any doctor's certificate or record of examination to an application for a policy of insurance . . . with intent to injure or defraud any person, commits a felony of the third degree." § 831.21 (emphasis added). The statute dealing with counterfeiting a payment instrument defines "counterfeit" to mean the manufacture without permission or the manufacture "with a fictitious name, routing number, or account number." § 831.28(1). It is a third-degree felony "to counterfeit a payment instrument with the intent to defraud." § 831.28(2)(a).

The ordinary definition of "simulate" is "to give or assume the appearance or effect of often with the intent to deceive." *Simulate*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/simulate (last visited Dec. 5, 2017). In the legal definition of "simulation" it states as follows: "1. An assumption of an appearance that is feigned, false, or deceptive. 2. *Civil law*. A feigned, pretended act, usu. to mislead or deceive." *Simulation*, Black's Law Dictionary (10th ed. 2014).

Thus, "forges" and "counterfeits" refer to making something false or fictitious, and "simulate" also includes assuming an appearance that is false or deceptive. We recognize that other statutes do explicitly require a false alteration, such as the ones cited previously. But if we construe "alters" in context with "forges," "counterfeits," and "simulates," we are led to the conclusion that the legislature intended that a person alter a certificate to make it false or deceptive in order to constitute a violation of the statute. Construed in this way, innocent alterations such as changing the font or adding a logo would not be criminalized. Instead, only alterations that made the certificate false or deceptive would constitute a crime. But we do not go so far as to

read the statute as requiring a specific intent to defraud.  See Koczwara, 837 So. 2d at 594.

The Carriers rely on cases such as State v. Saiez, 489 So. 2d 1125, 1129 (Fla. 1986), and State v. Thomas, 133 So. 3d 1133, 1136 (Fla. 5th DCA 2014), which determined that statutes that criminalized the possession of embossing machines and counterfeit payment instruments, respectively, were unconstitutional for criminalizing behavior that is otherwise inherently innocent and violated substantive due process.  In Thomas, although the portion of the statute prohibiting possession of a counterfeit payment instrument did not include a specific intent, another portion of the statute did. 133 So. 3d. at 1134.  The statute provided that "[i]t is unlawful to counterfeit a payment instrument with the intent to defraud a financial institution, account holder, or any other person or organization."  Id.  The court stated that the legislature knew how to draft an intent to defraud element and could accomplish its legitimate purpose by drafting the possession portion of the statute with an intent to defraud element.  Id. at 1137.  But in both Thomas and Saiez, it was the mere possession of an item that the courts found constituted criminalizing otherwise innocent conduct, not the actual counterfeiting or altering as is the issue in this case.

Based on Giorgetti, we infer a knowledge element so that a mistaken alteration would not constitute a violation of the statute.  But a knowing alteration could still have the potential to capture innocent conduct, such as the examples the trial court gave of changing the font or color of the font or adding a pet store logo to the certificate. Thus, we necessarily construe the statute in context as requiring that the knowing alteration result in a false or deceptive document.  Accordingly, we conclude that

section 585.145(3) does not violate substantive due process as criminalizing otherwise innocent conduct.

**Substantive Due Process—Void for Vagueness**

The Carriers argued and the trial court agreed that section 585.145(3) is facially void for vagueness as to the phrase "alters." The State argued that the statute is not vague as applied to the Carriers. In this early stage of the case, we have little information to go on as to the facts—the charging documents, the probable cause affidavit, and the attorneys' assertions at the motion to dismiss hearing. Many of the facts are undisputed, but the State asserted additional facts at the hearing, such as that the Carriers' purpose of omitting the text boxes on the certificates was to provide only lot numbers instead of names of vaccines so as to obfuscate which vaccines puppies had received. The State also contended that Dr. Carrier was not licensed to sign the certificates during the time period charged. Defense counsel did not appear to specifically dispute these assertions at the hearing, but his argument was that Ms. Carrier omitted the text boxes because all the immunizations would not fit on the form.

The courts are to construe a statute in favor of upholding it when it is "reasonably possible and consistent with constitutional rights." State v. Brake, 796 So. 2d 522, 527 (Fla. 2001). But when a citizen challenges a statute as vague, "any doubt as to a statute's validity" should be resolved in the citizen's favor. Id. "Substantive due process implicates the vagueness doctrine, which requires that 'a statute gives a person of ordinary intelligence fair notice of what constitutes forbidden conduct. The language of the statute must provide a definite warning of what conduct is required or prohibited, measured by common understanding and practice.' " State v. Menuto, 912 So. 2d 603,

- 12 -

608 (Fla. 2d DCA 2005) (citations and internal quotations omitted in <u>Menuto</u>) (quoting <u>Sieniarecki v. State</u>, 756 So. 2d 68, 74 (Fla. 2000)).  In addition, "the statute must define the offense in a manner that does not encourage arbitrary and discriminatory enforcement."  <u>Brake</u>, 796 So. 2d at 528.  We note that it does not appear that arbitrary and discriminatory enforcement has been a problem with section 585.145(3), which was first enacted in 1991, as there are no reported cases dealing with the statute.  <u>See</u> Ch. 91-294, § 5, at 2803, Laws of Fla.

As recognized by the Eighth Circuit, the United States Supreme Court in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), "applied a more expansive vagueness analysis than prior case law might have suggested.  Before <u>Johnson</u>, we required defendants challenging the facial validity of a criminal statute to establish that 'no set of circumstances exist[ed] under which the [statute] would be valid.' "  <u>United States v. Bramer</u>, 832 F.3d 908, 909 (8th Cir. 2016) (alterations in <u>Bramer</u>) (quoting <u>United States v. Stephens</u>, 594 F.3d 1033, 1037 (8th Cir. 2010)).  "<u>Johnson</u>, however, clarified that a vague criminal statute is not constitutional 'merely because there is some conduct that [clearly] falls within the provision's grasp.' "  <u>Bramer</u>, 832 F.3d at 909 (alteration supplied) (quoting <u>Johnson</u>, 135 S. Ct. at 2561).  But the defendant must still prove that the challenged provision is vague as to the defendant's conduct.  <u>Id.</u>

In the trial court, the State argued that the statute was not vague as applied to the Carriers, but the Carriers argued and the trial court found the statute was facially vague.  When the overbreadth doctrine is not implicated, the court looks at the facts in the case before it in considering a vagueness challenge.  <u>State v. Barnes</u>, 686 So. 2d 633, 636 (Fla. 2d DCA 1996).  The Carriers have not asserted that First

Amendment freedoms are involved so as to implicate the overbreadth doctrine. See id. at 636 n.2.

A defendant may not make a facial vagueness challenge if the defendant's conduct is "clearly proscribed by the plain and ordinary meaning of the statute." Sieniarecki, 756 So. 2d at 74 (quoting Barnes, 686 So. 2d at 637). Therefore, the court must first evaluate the defendant's conduct before considering other hypothetical situations. Id. at 75; Menuto, 912 So. 2d at 609. Here, the trial court did not first examine the Carriers' conduct to determine if the statute was vague as applied to their conduct. However, we note that an as-applied analysis would be difficult on the record currently before us when the facts have not been sufficiently developed.

With respect to the trial court's conclusion that the phrase "official certificate of veterinary inspection" is vague, a point that the Carriers did not argue to the trial court, we reject that conclusion. It is clear as applied to the Carriers that official certificates were allegedly altered or simulated.

The Carriers' vagueness argument centers on the word "alters." When a statute does not define a term, the courts may look "to other statutory provisions, case law, or the plain and ordinary meaning of a word of common usage" to determine the word's meaning. Brake, 796 So. 2d at 528. As described above, "alter" means to change or modify. Taken in context with the words around it to mean an alteration that makes the certificate false or deceptive, the statute is not vague on its face as the trial court concluded because the hypothetical examples of innocent alterations that the trial court gave would no longer fall within the statute's reach. It is questionable whether the Carriers' activities fall within the statute because we do not know what the State can

prove regarding any deceptive nature of the alterations.  And if the State can prove that Dr. Carrier signed the certificates when he was not authorized, perhaps the State can prove his conduct amounts to a violation of the statute.

In summary, we determine that section 585.145(3) is not vague on its face; further, in light of our construing the statute as requiring that a violation must be based on the knowing alteration of a certificate such that it results in a false or deceptive document, the statute does not violate substantive due process.  Accordingly, we reverse the trial court's order and remand for further proceedings.

Reversed and remanded.


MORRIS and ROTHSTEIN-YOUAKIM, JJ., Concur.